141 F.3d 524
 125 Ed. Law Rep. 1078
 Kristopher SELLERS, by his parents, Allen and Sherri
SELLERS; Sherri Sellers; Allen Sellers,
Plaintiffs-Appellants,
v.
THE SCHOOL BOARD OF THE CITY OF MANASSAS, VIRGINIA, a
Municipal Corporation; James E. Upperman,
Superintendent of the School Board of
the City of Manassas,
Defendants-Appellees.
 No. 97-1762.
 United States Court of Appeals,
Fourth Circuit.
 Argued Jan. 29, 1998.
Decided April 13, 1998.
 
 ARGUED: Paul S. Dalton, Dalton & Dalton, P.C., Annandale, Virginia, for Appellants. Kathleen Shepherd Mehfoud, Hazel & Thomas, P.C., Richmond, Virginia, for Appellees.
 Before WILKINSON, Chief Judge, PHILLIPS, Senior Circuit Judge, and VOORHEES, United States District Judge for the Western District of North Carolina, sitting by designation.
 Affirmed by published opinion. Chief Judge WILKINSON wrote the opinion, in which Senior Judge PHILLIPS and Judge VOORHEES joined.
 OPINION
 WILKINSON, Chief Judge:
 
 
 1
 Kristopher Sellers and his parents sued the School Board of the City of Manassas and superintendent James Upperman, alleging violations of the Individuals with Disabilities Education Act ("IDEA"), section 504 of the Rehabilitation Act, 42 U.S.C. § 1983, and Virginia law. The Sellers sought compensatory and punitive damages. The district court granted the defendants' motion to dismiss primarily on the grounds that such damages are unavailable under IDEA, that the Sellers failed to allege a section 504 violation, and that the Sellers' failure to state a claim under either IDEA or section 504 likewise required dismissal of the section 1983 claim. Sellers v. School Bd. of Manassas, 960 F.Supp. 1006 (E.D.Va.1997). We agree that IDEA does not provide for compensatory or punitive damages and that plaintiffs failed to allege a section 504 violation. Furthermore, because parties may not sue under section 1983 for IDEA violations, the Sellers' claim under that statute also must be dismissed. Accordingly, we affirm the judgment of the district court.
 
 I.
 
 2
 The instant appeal is from a dismissal for failure to state a claim, see Fed.R.Civ.P. 12(b)(6); thus we accept the facts alleged in the complaint as true. McNair v. Lend Lease Trucks, Inc., 95 F.3d 325, 327 (4th Cir.1996) (en banc). At the time the Sellers filed their complaint, Kristopher was eighteen years old. Although he had recently been diagnosed as learning disabled and emotionally disturbed, his disability apparently had gone undiscovered for many years. Kristopher received no special education services until the 1995-1996 school year. The complaint states, however, that his test scores as early as fourth grade "should have alerted" the defendants of the need to test and evaluate Kristopher for disabilities. At some point, a truancy petition was brought against Kristopher but was dismissed in March 1996 by the domestic relations court because administrative proceedings under IDEA were pending.
 
 
 3
 According to the complaint, the parties to the present suit reached a settlement as to all educational issues. After the settlement, a hearing officer held due process hearings and decided that he lacked authority to award compensatory and punitive damages. The Sellers sought review of the decision by a state-level hearing officer. He too, however, concluded that hearing officers lacked authority to award such damages. The Sellers then filed the present suit in the United States District Court for the Eastern District of Virginia, seeking, inter alia, compensatory and punitive damages for violations of IDEA, the Rehabilitation Act, 42 U.S.C. § 1983, and Virginia law. They complained that the defendants should have discovered Kristopher's learning disabilities and provided him with special education services. The Sellers also disputed the hearing officers' refusal to award compensatory and punitive damages. Terming the Sellers' action one for educational malpractice, the district court dismissed the Sellers' lawsuit pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. The Sellers now appeal the dismissal of their IDEA, Rehabilitation Act, and section 1983 claims.[1]
 
 II.
 
 4
 We first address the Sellers' claims under IDEA. The Sellers appear to base their claims on two alleged violations of the statute. First, because the defendants did not evaluate Kristopher for learning disabilities after certain test scores should have alerted them of the need to do so, they neglected their duty to identify, locate, and evaluate disabled children. Second, because Kristopher did not receive any special education services prior to the 1995-1996 school year, defendants did not provide him with a free appropriate public education. For these alleged violations, the Sellers contend that they are entitled to compensatory and punitive damages under IDEA. See Emma C. v. Eastin, 985 F.Supp. 940, 945 (N.D.Cal.1997).
 
 
 5
 IDEA provides that a court reviewing the findings and determination of a hearing officer "shall grant such relief as [it] determines is appropriate." 20 U.S.C. § 1415(e)(2).[2] In Hall by Hall v. Vance County Bd. of Educ., 774 F.2d 629 (4th Cir.1985) ("Vance "), this court interpreted the meaning of "appropriate" relief in an earlier version of IDEA. Vance held that appropriate relief could include reimbursement for private school tuition where a county board of education had failed to provide a free appropriate public education to a disabled child. Id. at 633. It followed an earlier decision of the Supreme Court that had likewise found appropriate relief could include tuition reimbursement. School Comm. of Burlington v. Department of Educ. of Mass., 471 U.S. 359, 370, 105 S.Ct. 1996, 2002-03, 85 L.Ed.2d 385 (1985). However, Vance made clear that not all forms of relief are appropriate. While the Act permitted reimbursement, it did "not create a private cause of action for damages for educational malpractice." Vance, 774 F.2d at 633 n. 3.
 
 
 6
 Vance bars the Sellers' recovery under IDEA. Their claim is indistinguishable from one of educational malpractice. The Sellers simply allege that the defendants improperly diagnosed Kristopher and that, as a result, either they or Kristopher have suffered some unspecified tort-like injuries. To award compensatory or punitive damages under these circumstances would disregard settled circuit precedent.
 
 
 7
 Nothing in the years since Vance has undermined the soundness of its holding. Tort-like damages are simply inconsistent with IDEA's statutory scheme. The touchstone of a traditional tort-like remedy is redress for a broad range of harms "associated with personal injury, such as pain and suffering, emotional distress, harm to reputation, or other consequential damages." United States v. Burke, 504 U.S. 229, 239, 112 S.Ct. 1867, 1873, 119 L.Ed.2d 34 (1992) (interpreting Title VII). By contrast, the touchstone of IDEA is the actual provision of a free appropriate public education.
 
 
 8
 To advance this goal, IDEA provides a panoply of procedural rights to parents to ensure their involvement in decisions about their disabled child's education. See Burlington, 471 U.S. at 368, 105 S.Ct. at 2001-02; see also Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 206, 102 S.Ct. 3034, 3050-51, 73 L.Ed.2d 690 (1982). For example, parents may examine all relevant records relating to their disabled child's identification, evaluation, placement, and receipt of a free appropriate public education. 20 U.S.C. § 1415(b)(1)(A). They must receive written notice prior to changes in the child's identification, evaluation, placement, or receipt of a free appropriate public education. Id. § 1415(b)(1)(C). They also may present complaints with respect to such matters. Id. § 1415(b)(1)(E). They can air these complaints in an "impartial due process hearing," id. § 1415(b)(2), and, in some cases, can appeal the findings and decision rendered in that hearing. Id. § 1415(c). Finally, a party aggrieved by the findings or decision of a hearing officer may seek judicial review. Id. § 1415(e)(2).
 
 
 9
 The purpose of these procedural mechanisms is to preserve the right to a free appropriate public education, not to provide a forum for tort-like claims of educational malpractice. Accordingly, the Supreme Court has noted that "equitable considerations are relevant in fashioning relief." Burlington, 471 U.S. at 374, 105 S.Ct. at 2005; see also Florence County Sch. Dist. Four v. Carter, 510 U.S. 7, 16, 114 S.Ct. 361, 366, 126 L.Ed.2d 284 (1993). For example, the Court in Burlington concluded that "by empowering the court to grant 'appropriate' relief Congress meant to include retroactive reimbursement to parents as an available remedy in a proper case." 471 U.S. at 370, 105 S.Ct. at 2003; see also Florence County, 510 U.S. at 14, 114 S.Ct. at 365-66. Tuition reimbursement requires an education agency "to belatedly pay expenses that it should have paid all along." Burlington, 471 U.S. at 370-71, 105 S.Ct. at 2003. Likewise, appropriate relief may include special education services. Such services are part and parcel of the free appropriate public education to which the child is entitled. See id. at 367-68, 105 S.Ct. at 2001-02. But the Court has never approved an award of compensatory or punitive damages under IDEA for a violation of its requirements. In fact, it "took pains to emphasize that ... reimbursement [for appropriate specialized education] should not be characterized as 'damages.' " Hall v. Knott County Bd. of Educ., 941 F.2d 402, 407 (6th Cir.1991) (citing Burlington, 471 U.S. at 370, 105 S.Ct. at 2002-03); see also Whitehead By and Through Whitehead v. School Bd. For Hillsborough County, 918 F.Supp. 1515, 1519 (M.D.Fla.1996). Compensatory or punitive damages would transform IDEA into a remedy for pain and suffering, emotional distress, and other consequential damages caused by the lack of a free appropriate public education. Such a result would be inconsistent with the structure of the statute, which so strongly favors the provision of and, where appropriate, the restoration of educational rights.[3] Charlie F. v. Board of Educ. of Skokie Sch. Dist., 98 F.3d 989, 991 (7th Cir.1996); Hall v. Knott County, 941 F.2d at 407; Manecke v. School Bd. of Pinellas County, 762 F.2d 912, 915 n. 2 (11th Cir.1985).
 
 
 10
 The Sellers base their claims on events that occurred as far back as the fourth grade. Yet they did not file their complaint until Kristopher was eighteen years old. To entertain the Sellers' claims thus seems inconsistent with a scheme structured to encourage prompt resolution of special education disputes. E.g., Schimmel by Schimmel v. Spillane, 819 F.2d 477, 483 (4th Cir.1987) (applying Virginia's one-year statute of limitations to civil actions brought under IDEA); 8 Va. A.D.C. § 20-80-70.A.10.I (requiring appeals from local hearing officer's decision to be instituted within thirty administrative working days). At this late date, it would be difficult to determine what particular school officials and special education instructors should have done to evaluate Kristopher or to provide him with particular services.
 
 
 11
 Not only are awards of compensatory and punitive damages inconsistent with IDEA's structure, they present acute problems of measurability. Relief such as retroactive reimbursement is definable and concrete. The actual costs borne by parents for special education and related services provide an ascertainable benchmark for calculating the relief to which they may be entitled. By contrast, IDEA lacks any particular standard by which a court could evaluate what amount of compensatory or punitive damages is appropriate in a particular case. Compare 42 U.S.C. § 1981a(b)(3) (providing a schedule for awards of compensatory and punitive damages for certain violations of Title VII). Absent any such standards, the range of possible monetary awards would be vast, particularly in cases seeking recovery for less tangible injuries such as emotional distress or pain and suffering. Such a result is not consistent with a statute designed primarily to provide education to disabled children.
 
 
 12
 Finally, we note that other circuits share our view that compensatory and punitive damages are generally unavailable under the statute. E.g., Charlie F., 98 F.3d at 991 (compensatory damages unavailable); Heidemann v. Rother, 84 F.3d 1021, 1033 (8th Cir.1996) (general or punitive damages unavailable); Crocker v. Tennessee Secondary Sch. Athletic Ass'n, 980 F.2d 382, 386-87 (6th Cir.1992) (compensatory or punitive damages unavailable); Knott County, 941 F.2d at 407 (general damages unavailable); Manecke, 762 F.2d at 916 n. 2 ("tort-type damages" unavailable); Whitehead, 918 F.Supp. at 1520 (compensatory or punitive damages unavailable). Like this circuit, they reason that the structure of IDEA and the Supreme Court's decisions interpreting it do not support these forms of relief. Accordingly, the district court properly dismissed the Sellers' claims.
 
 III.
 
 13
 The Sellers next argue that, even if they cannot recover compensatory and punitive damages under IDEA, such damages are recoverable for a violation of section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a). They maintain that the defendants' failure both to identify Kristopher's disability and to provide him with a free appropriate public education violated section 504 because it constituted discrimination against Kristopher solely on the basis of his disability. Because the Sellers merely reallege a violation of IDEA, and fail to allege facts sufficient to state a claim under section 504, we reject their argument.
 
 
 14
 IDEA and the Rehabilitation Act are different statutes. Whereas IDEA affirmatively requires participating States to assure disabled children a free appropriate public education, see, e.g., 20 U.S.C. § 1412(1), section 504 of the Rehabilitation Act instead prohibits discrimination against disabled individuals. Section 504 states: "No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a).
 
 
 15
 We have held that to establish a violation of section 504, plaintiffs must prove that they have been discriminated against--that they were "excluded from the employment or benefit due to discrimination solely on the basis of the disability." Doe v. University of Md. Med. Sys. Corp., 50 F.3d 1261, 1265 (4th Cir.1995) (emphasis added). This discrimination requirement is rooted in two parts of the statute's text: plaintiffs must prove that they have either been "subjected to discrimination" or excluded from a program or denied benefits "solely by reason of" their disability. To prove discrimination in the education context, "something more than a mere failure to provide the 'free appropriate education' required by [IDEA] must be shown." Monahan v. Nebraska, 687 F.2d 1164, 1170 (8th Cir.1982); see also Lunceford v. District of Columbia Bd. of Educ., 745 F.2d 1577, 1580 (D.C.Cir.1984). We agree with those courts that hold "that either bad faith or gross misjudgment should be shown before a § 504 violation can be made out, at least in the context of education of handicapped children." Monahan, 687 F.2d at 1171; see also Hoekstra v. Independent Sch. Dist. No. 283, 103 F.3d 624, 626-27 (8th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 1852, 137 L.Ed.2d 1054 (1997); Wenger v. Canastota Cent. Sch. Dist., 979 F.Supp. 147, 152 (N.D.N.Y.1997).
 
 
 16
 In their complaint, the Sellers contend only that Kristopher's test scores from as early as fourth grade "should have alerted" the defendants of his disability and the need to provide him a free appropriate public education. The complaint therefore presents, at best, a negligence claim--that the defendants should have recognized Kristopher's disability. The court in Monahan specifically addressed situations in which plaintiffs allege a section 504 violation in the education context on the basis of negligence:
 
 
 17
 The reference in the Rehabilitation Act to "discrimination" must require, we think, something more than an incorrect evaluation, or a substantively faulty individualized education plan, in order for liability to exist. Experts often disagree on what the special needs of a handicapped child are, and the educational placement of such children is often necessarily an arguable matter. That a court may, after hearing evidence and argument, come to the conclusion that an incorrect evaluation has been made, and that a different placement must be required under [IDEA], is not necessarily the same thing as a holding that a handicapped child has been discriminated against solely by reason of his or her handicap.
 
 
 18
 687 F.2d at 1170. The Sellers' claim that the defendants failed to notice signs of disability is virtually indistinguishable from complaints that a student has been incorrectly evaluated. They allege no facts which would suggest the defendants discriminated, i.e., that they acted with bad faith or gross misjudgment. In similar cases involving allegations of a school district's failure to "timely assess and diagnose" a child's disability, courts have been reluctant to find in mis-diagnoses the evidence of bad faith or gross misjudgment sufficient to support a discrimination claim under section 504. Wenger, 979 F.Supp. at 153; Brantley v. Independent Sch. Dist. No. 625, 936 F.Supp. 649, 657 (D.Minn.1996). The Sellers likewise raise nothing more than a failure to timely assess and diagnose Kristopher's disability. Their complaint does not clear the hurdle set by the explicit language of section 504. We hold, therefore, that the district court correctly dismissed the Sellers' claim under the Rehabilitation Act.
 
 IV.
 
 19
 The Sellers next contend that they still may recover compensatory and punitive damages under 42 U.S.C. § 1983. They argue that other courts have recognized both that section 1983 actions may be premised on IDEA violations, and that plaintiffs may recover monetary damages pursuant to such actions. See, e.g., W.B. v. Matula, 67 F.3d 484, 493-95 (3d Cir.1995). We disagree. Because IDEA provides a comprehensive remedial scheme for violations of its own requirements, we hold that parties may not sue under section 1983 for an IDEA violation.
 
 A.
 
 20
 In Smith v. Robinson, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), the Supreme Court considered whether plaintiffs could pursue, under section 1983, claims based on the Rehabilitation Act or the Equal Protection Clause when such claims were "virtually identical to" those made under the Education of the Handicapped Act ("EHA") (IDEA's predecessor). The Court found that EHA's comprehensive remedies demonstrated Congress' intent that disabled children pursue claims to a free appropriate public education solely through the remedial mechanisms established by the statute. Id. at 1009, 104 S.Ct. at 3466-67. Specifically, the Court held:
 
 
 21
 We conclude, therefore, that where the EHA is available to a handicapped child asserting a right to a free appropriate public education, based either on the EHA or on the Equal Protection Clause of the Fourteenth Amendment, the EHA is the exclusive avenue through which the child and his parents or guardian can pursue their claim.
 
 
 22
 Id. at 1013, 104 S.Ct. at 3469 (emphasis added). Under Smith, therefore, the Sellers undoubtedly would be precluded from circumventing IDEA's limits on remedial relief by suing instead under section 1983 for the alleged IDEA violations.
 
 
 23
 The Sellers argue, however, that the 1986 amendments to EHA, enacted in response to the Smith decision, demonstrate a clear congressional intent that plaintiffs once again be permitted to sue under section 1983 for IDEA violations. We disagree. A closer reading of the 1986 provision relied upon by the Sellers--20 U.S.C. § 1415(f)--reveals no intent that parties be able to bypass the remedies provided in IDEA by suing instead under section 1983 for an IDEA violation.
 
 
 24
 Section 1415(f) provides: "Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973, or other Federal statutes protecting the rights of children and youth with disabilities ...." Id. (emphasis added).[4] Concededly, section 1415(f) overrules much of Smith 's holding. The amendment specifically rejects the Smith Court's interpretation of EHA as precluding claims under the Constitution or the Rehabilitation Act that are virtually identical to EHA claims. But while section 1415(f) explicitly preserves remedies under the Constitution, the Rehabilitation Act, and specified "other" statutes, it simply fails to mention section 1983. The reference to "other" statutes protecting the rights of disabled children cannot naturally be read to include 42 U.S.C. § 1983, a statute which speaks generally and mentions neither disability nor youth. By preserving rights and remedies "under the Constitution," section 1415(f) does permit plaintiffs to resort to section 1983 for constitutional violations, notwithstanding the similarity of such claims to those stated directly under IDEA. But section 1415(f) does not permit plaintiffs to sue under section 1983 for an IDEA violation, which is statutory in nature. See Maine v. Thiboutot, 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980). Nothing in section 1415(f) overrules the Court's decision in Smith to the extent it held that Congress intended IDEA to provide the sole remedies for violations of that same statute. If Congress meant to overrule Smith on this significant point, it certainly chose an oblique and essentially implausible means of doing so.
 
 
 25
 The different standards of liability applicable to constitutional equal protection claims and to statutory IDEA claims confirm our interpretation of section 1415(f). Under IDEA, the simple failure to provide a child with a free appropriate public education constitutes a violation of the statute. 20 U.S.C. § 1412(1). By contrast, plaintiffs must meet a higher standard of liability to prevail on a constitutional claim. The Supreme Court's decision in Washington v. Davis, 426 U.S. 229, 239, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976), requires that an equal protection claim be sup ported by evidence of purposeful discrimination. In the context of education of disabled children, Washington 's purpose requirement is similar to that recognized under section 504 of the Rehabilitation Act. And even if a plaintiff can prove a school board intended to treat children differently because of their disabilities, another hurdle would remain. Because the Supreme Court has yet to classify disabled persons as a suspect class, see City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 445-46, 105 S.Ct. 3249, 3257-58, 87 L.Ed.2d 313 (1985), and because the Court also has not identified education as a fundamental right, San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 33-37, 93 S.Ct. 1278, 1296-99, 36 L.Ed.2d 16 (1973), a plaintiff in this context would have to prove that a school board's decision was without any rational basis. Naturally school boards will be subject to liability for statutory IDEA violations much more frequently than for similarly pled constitutional claims. It is easy therefore to understand why Congress intended to subject school boards to the more expansive remedies available under section 1983 for their more culpable constitutional failures, yet not for breaches of IDEA. Section 1415(f) sensibly retains IDEA's comprehensive scheme as the remedy for violations of that Act.
 
 
 26
 The Sellers nevertheless attempt to supplement, and thereby evade, the limited textual command of section 1415(f) by relying on the legislative history of the 1986 amendments. Even if the text were not the sole authoritative source of section 1415(f)'s meaning, the legislative history would still fail to support the proposition that Congress intended that plaintiffs be able to sue under section 1983 for IDEA violations. The Sellers first rely on the following excerpt from the House Committee Report:
 
 
 27
 In sum, since 1978, it has been Congress' intent to permit parents or guardians to pursue the rights of handicapped children through EHA, section 504, and section 1983.... Congressional intent was ignored by the U.S. Supreme Court when, on July 5, 1984, it handed down its decision in Smith v. Robinson.
 
 
 28
 H.R.Rep. No. 99-296, at 4 (1985). The Sellers also support their argument with a brief excerpt from the House Conference Report, which states: "It is the conferees' intent that actions brought under 42 U.S.C.1983 are governed by this provision." H.R. Conf. Rep. No. 99-687, at 7 (1986), reprinted in 1986 U.S.C.C.A.N. 1807, 1809.
 
 
 29
 Nothing in these portions of the legislative history contradicts our construction, grounded in the text of section 1415(f). The House Reports indicate a legislative intent that disabled children be able to protect their rights through IDEA, the Rehabilitation Act, other statutes protecting the rights of disabled children, and the Constitution itself. The Reports naturally refer to section 1983, as it supplies disabled children and their parents or guardians with a private right of action for constitutional violations. Again, however, even when read in the light most favorable to the Sellers' claims, these portions of the House Reports fail to indicate any legislative intent with respect to section 1983 claims premised on IDEA violations. When construed in their most natural form, the excerpts demonstrate the unremarkable proposition that Congress intended section 1415(f) to restore the ability of disabled children and their parents or guardians to utilize section 1983 to protect constitutional rights.
 
 B.
 
 30
 Our interpretation of section 1415(f) is also shaped by rules of construction reserved for federal statutes placing funding conditions on the States. IDEA is a joint federal-state program enacted under Congress' spending power. See Virginia Dep't of Educ. v. Riley, 106 F.3d 559, 566-68 (4th Cir.1997) (en banc). In return for federal funds to aid the education of disabled children, participating States must meet certain statutory requirements. See 20 U.S.C. § 1412 ("In order to qualify for assistance ..., a State shall demonstrate to the Secretary that the following conditions are met:...."). In Pennhurst State School & Hospital v. Halderman, 451 U.S. 1, 17, 101 S.Ct. 1531, 1539-40, 67 L.Ed.2d 694 (1981), the Supreme Court announced an interpretive rule for statutes like IDEA enacted pursuant to the spending power. Because these statutes operate much like contracts between the federal and state governments, "[t]he legitimacy of Congress' power to legislate under the spending power thus rests on whether the State voluntarily and knowingly accepts the terms of the contract." Suter v. Artist M., 503 U.S. 347, 356, 112 S.Ct. 1360, 1366, 118 L.Ed.2d 1 (1992) (quoting Pennhurst, 451 U.S. at 17, 101 S.Ct. at 1539-40) (internal quotation marks omitted). States cannot knowingly accept federal funding conditions unless they are accurately apprised of the requirements being imposed by the federal government. Thus, "if Congress desires to condition the States' receipt of federal funds, it 'must do so unambiguously....' " South Dakota v. Dole, 483 U.S. 203, 207, 107 S.Ct. 2793, 2796, 97 L.Ed.2d 171 (1987) (quoting Pennhurst, 451 U.S. at 17, 101 S.Ct. at 1539-40); see also Blessing v. Freestone, 520 U.S. 329, ----, 117 S.Ct. 1353, 1359, 137 L.Ed.2d 569 (1997); Suter, 503 U.S. at 356, 112 S.Ct. at 1366.
 
 
 31
 The Court held in Smith that EHA's comprehensive remedial scheme demonstrated Congress' intent that both EHA and equal protection claims to a free appropriate public education proceed solely through EHA's remedial mechanisms. 468 U.S. at 1013, 104 S.Ct. at 3469. States deciding whether to subject themselves to the statute's funding conditions therefore understood, after Smith, that their school boards and officials would not be subject to liability under section 1983 for EHA violations. Because IDEA is enacted pursuant to the spending power, Congress' statutory response to the Smith decision must be subjected to Pennhurst 's clear statement rule. If Congress intended section 1415(f) to permit plaintiffs to sue under section 1983 for IDEA violations, and thereby overrule Smith in that respect, it had to speak with clarity.
 
 
 32
 Section 1415(f) lacks that clarity. The provision fails to state, or even imply, that section 1983 suits may be brought for IDEA violations. Instead, it pointedly omits 42 U.S.C. § 1983 from its list of statutes. This omission is significant. Permitting the recovery of general damages through section 1983 for IDEA violations would subject school boards to damages exponentially greater than the tuition reimbursement they currently face under IDEA itself. Section 1415(f)'s vague language surely did not place States on notice of such sweeping and open-ended liability. If we were to permit section 1983 claims like the Sellers' to proceed, we would effectively blindside States with large and unanticipated penalties. Accordingly, we hold that section 1415(f) fails to express unambiguously a congressional intent that IDEA violations also be remedied by section 1983.[5] In light of the Court's holding in Smith, section 1415(f)'s effect on that decision, and the spending power concerns implicit in this question of interpretation, we hold that the Sellers cannot sue under section 1983 for alleged IDEA violations.[6] As a result, we reject their attempt to recover compensatory and punitive damages unavailable in an action directly under IDEA. We note that our conclusion is consistent with at least two other circuits that have held compensatory and punitive damages are not available through the alternate route of a section 1983 claim for violations of IDEA. See Heidemann, 84 F.3d at 1033 (general damages unavailable in section 1983 claim for alleged IDEA violations); Crocker, 980 F.2d at 386-87 (same).
 
 V.
 
 33
 For the foregoing reasons, we affirm the judgment of the district court.
 
 
 34
 AFFIRMED.
 
 
 
 [1]
 The Sellers also presented due process and equal protection claims in their complaint. The district court dismissed these claims in its memorandum opinion. In their brief on appeal, the Sellers do not contest the district court's dismissal of the constitutional claims
 
 
 [2]
 Congress recently amended IDEA. See Individuals with Disabilities Education Act Amendments of 1997, Pub.L. No. 105-17, 111 Stat. 37 (1997). All of the conduct in this case occurred prior to the enactment of these amendments. We note that several other courts have declined to apply the amendments to conduct occurring before their enactment. E.g., Heather S. by Kathy S. v. Wisconsin, 125 F.3d 1045, 1047 n. 1 (7th Cir.1997); Cypress-Fairbanks Indep. Sch. Dist. v. Michael F., 118 F.3d 245, 247 n. 1 (5th Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 690, 139 L.Ed.2d 636 (1998). While the amendments recodified several provisions of the IDEA to which we refer, we cite those provisions as codified prior to the enactment of the amendments. In all events, the amendments would make no difference to the outcome of this case
 
 
 [3]
 This carefully crafted statutory scheme, primarily concerned with the provision of special education and related services, overcomes a "presumption in favor of any appropriate relief for violation of a federal right." Franklin v. Gwinnett County Pub. Sch., 503 U.S. 60, 73, 112 S.Ct. 1028, 1036, 117 L.Ed.2d 208 (1992)
 
 
 [4]
 We note that even were we applying IDEA after its amendment in 1997, our analysis would remain the same. Congress amended section 1415(f) only with respect to matters unrelated to the issue we consider in this decision. For example, Congress added language to indicate that IDEA also does not preclude the pursuit of remedies under the Americans with Disabilities Act of 1990: "Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities...." 20 U.S.C. § 1415(l) (language added by amendment in italics)
 
 
 [5]
 The Sellers argue that Wright v. Roanoke Redevelopment & Housing Authority, 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987), should alter our conclusion. The Court did find that the Housing Act conferred benefits that were delineated specifically enough "to qualify as enforceable rights under Pennhurst." Id. at 432, 107 S.Ct. at 774. This finding, however, did not signify that Pennhurst 's rule of statutory construction was in any way relaxed. Moreover, on the question of whether the Housing Act's remedial scheme foreclosed reliance on section 1983, the Wright Court explicitly cited Smith for its holding that EHA's provision of a private judicial remedy did evidence a congressional intent to preclude reliance on section 1983. 479 U.S. at 427, 107 S.Ct. at 772. Wright, in other words, actually confirmed the very point at issue in this case
 
 
 [6]
 Because the Sellers do not contend that the defendants failed to abide by a final administrative order, their case is not controlled by our decision in Robinson v. Pinderhughes, 810 F.2d 1270 (4th Cir.1987). In Pinderhughes, we found an exception to the Court's holding in Smith solely with respect to EHA's enforcement mechanism because it was not sufficiently comprehensive to preclude reliance on section 1983. Id. at 1274. The Sellers' complaint, however, is based on the more general denial of a free appropriate public education and is therefore squarely controlled by Smith