Joshua SMITH, A minor, by his mother
Sharon DUCK, and Sharon Duck,
Plaintiffs,

v.

ISLE OF WIGHT COUNTY SCHOOL BOARD, Dr. Michael W. McPherson, Superintendent of the Isle of Wight County Public Schools, and Ted Durniak, Director of Special Education, Isle of Wight County Public Schools, Defendants.

No. 2:03CV53.

United States District Court,
E.D. Virginia,
Norfolk Division.

Sept. 23, 2003.

John Warren Hart, John W. Hart, P.C., Virginia Beach, for Joshua Smith, A minor, by his mother Sharon Duck, Sharon Duck, plaintiffs.

Kevin Joseph Cosgrove, Scott Edwin Thompson, Hunton & Williams, Norfolk,

for Isle of Wight County School Board, Dr. Michael W. McPherson, Superintendent of the Isle of Wight County Public Schools, Ted Durniak, Director, Special Education, Isle of Wight County Public Schools, defendants.

### OPINION & ORDER

MILLER, United States Magistrate Judge.

This matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(c)(1) and Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia, by order of reference filed August 12, 2003.

### I. PROCEDURAL AND FACTUAL BACKGROUND

Joshua Smith ("Joshua") was born on May 4, 1989 and is currently 14 years old. He lives with his mother, Sharon Duck ("Mrs. Duck"), in Isle of Wight County and currently attends Windsor Middle School. In 1995, following several evaluations, the school determined that Joshua was a qualified handicapped person eligible to receive additional help. On May 3, 1995, a meeting was held and Mrs. Duck agreed to the program suggested by the school. On August 30, 1996, Mrs. Duck agreed to an Individualized Educational Program ("IEP") formulated for Joshua's second grade year, the 1996–1997 school year, pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. Following Joshua's second grade year, Joshua's teachers determined Joshua should repeat the second grade and another IEP was formulated for the 1997–1998 school year. Mrs. Duck agreed with the decision.

Joshua started third grade in September of 1998. The parties disagree as to whether an IEP was implemented for Joshua's third grade year. Neither the school, nor Mrs. Duck has produced a copy of an IEP, or records of any meetings discussing Joshua's IEP. However, Mrs. Duck contends there was an IEP in place for Joshua's third grade year.

After Joshua's third grade year, he and Mrs. Duck moved, and Joshua started the fourth grade at Carrsville Elementary School for the 1999–2000 school year. The registration form, filled out by Mrs. Duck on August 17, 1999, contains the following question, "Has [Joshua] been identified for Special Education, Gifted and Talented or Alternate Education Programs?" The "yes" box was checked and the phrase "1997 Special Ed" appears, although Mrs. Duck does not believe this is in her handwriting.

Joshua was not enrolled in any special education classes in the fourth grade, and no IEP was implemented. In October of 1999, Mrs. Duck asked that Joshua be referred for assistance, because she felt he needed additional help. On November 12, 1999, a meeting was held, and those in attendance included the Carrsville principal, three of Joshua's teachers, the special education coordinator and Joshua's grandmother. Mrs. Duck could not attend, but made certain Joshua's grandmother knew her position and could participate on her behalf. During this meeting, the decision was made that Joshua not be placed in special education classes or have an IEP. A report was prepared and given to Mrs. Duck. Although Mrs. Duck did not agree with the decision made at the meeting, she was not notified of her right to appeal, and did not appeal the decision. The Defendants admit Mrs. Duck was not given notice of her right to appeal the decision in accordance with the IDEA, prior to terminating Joshua's special education services. *See* 20 U.S.C. § 1415(b)(1)(C).

Mrs. Duck arranged for a student from James Madison University to help Joshua

over the summer between the fourth and fifth grades. During Joshua's fifth grade year, the 2000–2001 school year, Mrs. Duck asked if Joshua could be tested for placement in special education classes, but nothing came of her request. Joshua passed the fifth grade and passed his Standards of Learning ("SOL") exams. He entered the sixth grade at Windsor Middle School for the 2001–2002 school year. In June of 2002, Joshua was tested and placed in special education classes beginning in the summer between the sixth and seventh grades.

Mrs. Duck filed this Complaint on behalf of herself and Joshua on January 17, 2003. Mrs. Duck asserts Joshua was denied a proper education because he was not placed in special education classes during his fourth and fifth grade years, while attending Carrsville Elementary School. In Count I, Joshua and Mrs. Duck assert the Defendants violated the IDEA. They seek a declaratory judgment stating the Defendants violated the IDEA, injunctive relief requiring the Defendants to comply with the IDEA, any expenses incurred to provide Joshua a free appropriate public education, and costs. In Count II, Joshua asserts the Defendants violated § 504 of the Rehabilitation Act, and seeks compensatory and punitive damages. Lastly, in Count III, Joshua and Mrs. Duck bring a § 1983 claim seeking compensatory and punitive damages for the Defendants' violation of their right to due process and equal protection.

The Defendants filed a Motion for Summary Judgment on Counts II and III of the Complaint. On August 27, 2003, the Court heard argument on the Defendants' Motion for Summary Judgment [Document No. 8]. John W. Hart, Esq. represented the Plaintiffs. Kevin J. Cosgrove, Esq. and Scott E. Thompson, Esq. represented the Defendants. The Official Court Reporter was Penny Wile.

## II. STANDARD OF REVIEW OF MOTION FOR SUMMARY JUDGMENT

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). For the evidence to present a "genuine" issue of material fact, it must be "such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Facts are deemed material if they might affect the outcome of the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, the moving party's submission must foreclose the possibility of the existence of facts from which it would be open to a jury to make inferences favorable to the non-movant. *Id.*

In deciding a summary judgment motion, the court must view the record as a whole and in the light most favorable to the non-moving party. *Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.*, 763 F.2d 604, 610 (4th Cir.1985). If, however, "the evidence is so one-sided that one party must prevail as a matter of law," summary judgment should be granted in that party's favor. *O'Connor v. Consolidated Coin Caterers Corp.*, 56 F.3d 542, 545 (4th Cir.1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Either party may submit as evidence "pleadings, depositions, answers to interrogatories, and admissions on file, together with ... affidavits" to support or rebut a summary judgment motion. Fed.R.Civ.P. 56(c). Supporting and opposing affidavits must be based on personal knowledge and must set forth facts that would be admissi-

ble in evidence. *Id.* at 56(e). Furthermore, the party moving for summary judgment need not supply "affidavits or other similar materials negating the opponent's claim." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Rule 56 mandates a grant of summary judgment against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. The party who bears the burden of proving a particular element of a claim must "designate 'specific facts showing there is a genuine issue for trial'" with respect to that element. *Id.* at 324 (quoting Fed. R.Civ.P. 56(e)).

When a motion for summary judgment is made and supported by affidavits as provided for in Rule 56, an adverse party may not rest upon mere allegations or denials of the moving party's pleadings. Rather, the rule requires the nonmoving party's response, by affidavits or as otherwise provided for in Rule 56, to set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, should be entered against the nonmoving party. Fed.R.Civ.P. 56(e); *Atkinson v. Bass*, 579 F.2d 865, 866 (4th Cir.), *cert. denied*, 439 U.S. 1003, 99 S.Ct. 615, 58 L.Ed.2d 679 (1978).

With these controlling principles in mind, the Court turns to the merits of the motion for summary judgment.

## III. *ANALYSIS*

In their motion, the Defendants admit they violated the IDEA, and that the Plaintiffs are entitled to the remedies provided by the IDEA under Count I. They move for summary judgment on Counts II and III of the Complaint.

### A. *Count II is Barred Due to Joshua's Failure to Give the Required Notice*

 In Count II, Joshua asserts he is entitled to compensatory and punitive damages due to the Defendants' violation of § 504 of the Rehabilitation Act of 1973. 29 U.S.C. § 794. The Rehabilitation Act does not contain a statute of limitations, therefore, pursuant to 42 U.S.C. § 1988(a), one must be borrowed from the state statutes. When determining which state statute of limitations to apply, the court must select the state statute "most analogous" to the federal action. *See Wilson v. Garcia*, 471 U.S. 261, 268, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985). The Fourth Circuit has determined the one year statute of limitations provided in the Virginia Rights of Persons with Disabilities Act applies to cases brought under § 504 of the Rehabilitation Act. *Wolsky v. Medical College of Hampton Roads*, 1 F.3d 222, 224 (4th Cir. 1993), *cert. denied*, 510 U.S. 1073, 114 S.Ct. 881, 127 L.Ed.2d 77 (1994); Va.Code. § 51.5–46. The parties agree that this is the applicable statute to apply.

### 1. *Notice Requirement Contained in State Statute Applies*

 Two courts in this district have clarified that not only the statute of limitations contained in the Virginia Rights of Persons with Disabilities Act, but also the requirement to give written notice within 180 days of the alleged violation, applies to cases brought under § 504 of the Rehabilitation Act. *Bernard v. School Board of the City of Norfolk*, 58 F.Supp.2d 669, 672 (E.D.Va.1999); *Childress v. Clement*, 5 F.Supp.2d 384, 388–89 (E.D.Va.1998). Joshua disagrees with these courts. He argues that applying this notice requirement improperly imports an additional element into the claim which was not intended by Congress. At oral argument, counsel cited several cases in support of

this argument, none of which are applicable to this case. Counsel cited two cases which apply 180 day state statute of limitations periods to claims brought under § 504 of the Rehabilitation Act. *McCullough v. Branch Banking & Trust Company*, 35 F.3d 127 (4th Cir.1994) (applying the 180 day statute of limitations contained in the North Carolina Handicapped Persons Protection Act to § 504 Rehabilitation Act claim); *Carrozza v. Howard County, Md.*, 847 F.Supp. 365 (D.Md. 1994), *aff'd* 45 F.3d 425, 1995 WL 8033 (4th Cir. Jan. 10, 1995) (applying the six-month statute of limitations contained in Maryland's discrimination statute to claims under § 504 of the Rehabilitation Act). Neither of these state statutes contained a notice provision, therefore, the fact that notice was not required does not support Joshua's claim that the Virginia notice requirement does not apply. Further, both of these statutes contain a limitations period which is the same length as the time provided in Virginia's notice requirement. If anything, these cases show Virginia's statute requiring notice within 180 days is not overly restrictive.

Next, counsel cited an Eastern District of Virginia case holding the claimant's failure to meet the 90 day deadline contained in Title VII did not bar claimant's closely related § 1981 claim. *Griffin v. Prince William Hospital Corporation*, 716 F.Supp. 919, 922 (E.D.Va.1989). This case discusses a claim brought under two federal statutes. Section 1981 has its own statute of limitations, therefore, there would be no reason why the 90 day limitations requirement contained in Title VII would apply to bar a separate but related claim under § 1981. Counsel's argument is without support.

The United States Supreme Court has held that when a state statute of limitations is applied, the Court is obligated to also apply the state's tolling provisions.

*Board of Regents of the University of the State of New York, et. al. v. Tomanio*, 446 U.S. 478, 483–86, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980). The Court's reasons for refusing to adopt a state statute of limitations in a vacuum would similarly apply to the closely related notice provision contained in the Virginia statute.

"In virtually all statute of limitations the chronological length of the limitation period is interrelated with provisions regarding tolling, revival, and questions of application. In borrowing a state period of limitations for application to a federal cause of action, a federal court is relying on the State's wisdom in setting a limit, and exceptions thereto, on the prosecution of a closely analogous claim."

*Board of Regents of the University of the State of New York, et al. v. Tomanio*, 446 U.S. at 485–86, 100 S.Ct. at 1796 (*citing Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 463–64, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295 (1975)). Title 42 of the United States Code section 1988, which governs the borrowing of state statutes, "authorizes federal courts to disregard an otherwise applicable state rule of law only if the state law is 'inconsistent with the Constitution and laws of the United States.'" *Board of Regents of the University of the State of New York, et al. v. Tomanio*, 446 U.S. at 485, 100 S.Ct. at 1795.

The 180 day notice requirement contained in Virginia's statute, which is modeled after the federal statute, is not inconsistent with federal law and the policies underlying the Rehabilitation Act. Notably, federal civil rights statutes require prompt notification of an action to the employer. The Civil Rights Act of 1991 and the Americans with Disabilities Act require claimants to file a charge with the Equal Employment Opportunity Commission (EEOC) within 180 days of the al-

leged discriminatory practice, unless proceedings have been instituted within that time with a state or local agency. *See* 42 U.S.C. § 2000e–5(e)(1); 42 U.S.C. § 12117(a). Failure to file a complaint with the EEOC within the time period provided bars a claim in federal court. *Butts v. New York Department of Housing Preservation & Development,* 990 F.2d 1397, 1401 (2nd Cir.1993). The deadline promotes swift resolution of the conflict, which is equally beneficial in Rehabilitation Act claims.

This Court agrees with the holdings in *Bernard* and *Childress* that not only the one year statute of limitations, but also the 180 day notice requirement contained in the Virginia Rights of Persons with Disabilities Act applies to claims brought pursuant to § 504 of the Rehabilitation Act. Virginia Code § 51.5–46.

### 2. *Virginia's Tolling Provision Does Not Toll the Notice Period*

■ Having determined that the 180 day notice requirement applies to cases brought under § 504 of the Rehabilitation Act, the next question is whether any tolling provisions apply. The Supreme Court has held that where a federal court is required to apply a state statute of limitation, the court is obligated to also apply the state's tolling provisions as long as they are not inconsistent with the Constitution and laws of the United States. *Board of Regents of the University of the State of New York, et al. v. Tomanio,* 446 U.S. at 483–86, 100 S.Ct. at 1794–96 (applying this rationale to a § 1983 action). Virginia Code § 8.01–229(A), governing the tolling of state statutes of limitation for persons with disabilities, tolls the statute of limitations for infants until they reach the age of majority. Therefore, the one year statute of limitations provided in the Virginia Rights of Person with Disabilities Act is tolled as to Joshua Smith by Virginia Code § 8.01–229(A)(1) "during the period of his infancy."

There are no cases, however, which state that § 8.01–229 applies to toll notice requirements. Statutory and case law implies the opposite. There are no cases discussing the § 8.01–229 tolling provision with regard to the Virginia Rights of Persons with Disabilities Act's 180 day notice requirement. A review of § 8.01–229 with relation to two other Virginia notice statutes is instructive. First, Virginia Code § 8.01–195.6, the Virginia·Tort Claims Act, requires written notice of any tort claim against the Commonwealth within one year after accrual of the cause of action. This statute specifically states that if the claimant is under a disability at the time the cause of action accrued, the tolling provisions of § 8.01–229 apply. If § 8.01–229 applied to notice provisions generally, this language would not have been necessary.

Virginia Code § 8.01–222, requiring written notice of a tort action against a city or town within six months after the cause of action accrues, does not provide any tolling for infants. In *Breeding v. Hensley,* the Virginia Supreme Court required an infant suing under § 8.01–222 to give the required notice. *Breeding v. Hensley,* 258 Va. 207, 519 S.E.2d 369 (1999). The claimants, an infant suing by her mother, and her mother, brought a nuisance action for injuries sustained when the infant rode her bicycle into a trash dumpster. *Id.* 210–11, 519 S.E.2d 369. The claimants' attorney notified the town attorney of the accident, but incorrectly cited the date of the accident. *Id.* 214, 519 S.E.2d 369. The action against the town was dismissed as to both claimants for failure to comply with the notice requirement of § 8.01–222. *Id.* 215–16, 519 S.E.2d 369. No mention was made by the Court of the § 8.01–229 tolling provision for infants. Moreover, the predecessor to

§ 8.01–222, Virginia Code § 8–653, required written notice within 60 days, but contained a provision that infants and those who were *non compos mentis* would have 120 days to give the required notice. Virginia Code § 8–653 (1957). This provision would not be necessary if § 8.01–229 applied to toll the notice requirement.

Further, to say that the notice requirement has been strictly applied by the Supreme Court of Virginia is an understatement. In *Daniel v. City of Richmond*, the Virginia Supreme Court held that the plaintiff, who was totally incapacitated for the 60 day notice period, could not sue due to failure to give the required notice even though the city had notice of the actual time and place of the accident within the notice period. *Daniel v. City of Richmond*, 199 Va. 490, 100 S.E.2d 763. In *Town of Crewe v. Marler*, 228 Va. 109, 319 S.E.2d 748 (1984), the claimant's attorney wrote a letter within six months notifying the town of the claim for injuries sustained in a fall as a result of defective sidewalk conditions, and the town manager admitted knowing the exact location of the fall within six months of the incident. *Town of Crewe v. Marler*, 228 Va. at 111–12, 319 S.E.2d at 749. Nevertheless, the attorney's failure to note the exact location of the fall in the written notice resulted in the Virginia Supreme Court's reversal of the judgment in favor of the plaintiff and entry of judgment for the town as a result of noncompliance with the notice requirement. *Town of Crewe v. Marler*, 228 Va. at 114, 319 S.E.2d at 750. The Court held,

> [f]or this Court to place any limitation on the clear and comprehensive language of the statute, or to create an exception where none exists under the guise of statutory construction, would be to defeat the purpose of the enactment and to engage in judicial legislation.

*Id.* The Virginia Supreme Court clearly intends for notice provisions to be strictly

enforced. There are no statutes or case law indicating § 8.01–229 applies to toll any Virginia notice provisions, therefore, it will not be applied here.

The 180 day notice requirement contained in the Virginia Rights of Persons with Disabilities Act applies to cases brought under § 504 of the Rehabilitation Act of 1973, and the time period is not tolled for infants pursuant to § 8.01–229(A). Plaintiff admits that, if required, notice would have been due in this case in early 2000, and further admits notice has never been given. Therefore, Count II is dismissed for failure to comply with the notice requirement.

**B. Sharon Duck's § 1983 Claim in Count III is Barred by the Two Year Statute of Limitations**

The two year statute of limitations provided in § 8.01–243 for personal injuries is the applicable statute of limitations for § 1983 actions. *Lewis v. Richmond City Police Department*, 947 F.2d 733, 735 (4th Cir.1991). The plaintiffs are claiming Joshua's injuries stem from the fact that he was denied a proper education at Carrsville Elementary when he was not placed in special education classes. Joshua attended Carrsville Elementary from September of 1999 through 2001. The Complaint was filed on January 17, 2003. The issue becomes when the cause of action accrued.

Federal law determines accrual of a federal action, even in cases where the state statute of limitations is applied. *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir.1975). The cause of action accrues when the plaintiffs learn of the injury or the event that is the bases for their claim, "whether or not they know the injury is actionable." *Richards v. Fairfax County School Board*, 798 F.Supp. 338, 340–41 (E.D.Va.1992) (*citing Hall v. Knott County Bd. of Educ.*, 941 F.2d 402, 408 (6th Cir.1991), *cert. denied,*

502 U.S. 1077, 112 S.Ct. 982, 117 L.Ed.2d 144 (1992)). The decision was made on November 12, 1999 not to place Joshua in special education classes. Even though Mrs. Duck was not advised of her appeal rights following this decision, she did learn the bases of the present claim, that Joshua would not be placed in special education classes. Therefore, the cause of action accrued on November 12, 1999.[1] The Complaint was filed on January 17, 2003, more than two years after the cause of action accrued. Consequently, Mrs. Duck's claims under Count III are barred by the statute of limitations.

▬▬▬ The tolling provisions of § 8.01–229(A) apply in § 1983 cases. *Board of Regents of the University of the State of New York, et al. v. Tomanio,* 446 U.S. at 483–86, 100 S.Ct. at 1794–96. Therefore, Joshua Smith is entitled to bring this case by a next friend any time "during the period of his infancy," and his § 1983 claims are not barred by the statute of limitations. *Rivera v. Nedrich,* 259 Va. 1, 529 S.E.2d 310 (1999).

*C. Joshua Smith's § 1983 Claims in Count III Fail Because There is No Evidence of a Constitutional Violation*

▬▬ In Count III, Joshua has attempted to couch a statutory violation of the IDEA as a constitutional violation of his equal protection and due process rights. The factual allegations in Count III can be summarized as follows: (1) over the course of three school years, the Defendants ignored an IEP which was in place for Joshua, and (2) the Defendants failed to give the Plaintiffs notice of their procedural rights. The IDEA was enacted "to assure that all children with disabilities have available to them ... a free appropriate public education." 20 U.S.C. § 1400(c). The IDEA provides certain procedural safeguards for children with disabilities and their parents regarding the provision of a free appropriate public education. 20 U.S.C. § 1415. One of these safeguards is the right to written prior notice whenever the School Board proposes to change the educational placement of the child, including notice of the procedural safeguards in place if a parent disagrees with the decision. 20 U.S.C. § 1415(b)(3), (c) and (d). A violation of the procedural safeguards of the IDEA, as alleged in this case, entitles the plaintiff to IDEA remedies, but does not rise to the level of a constitutional violation.

In *Sellers v. The School Board of the City of Manassas, Virginia,* 141 F.3d 524 (4th Cir.), *cert. denied,* 525 U.S. 871, 119 S.Ct. 168, 142 L.Ed.2d 137 (1998), a high school student and his parents sought compensatory and punitive damages from the school board under the IDEA, the Rehabilitation Act, § 1983 and the Fourteenth Amendment due to the School Board's failure to identify the student's learning disability. The Fourth Circuit held plaintiffs cannot sue under § 1983 for an IDEA violation. *Id.* at 530. The Fourth Circuit reasoned that due to the comprehensive remedies established by the IDEA, Congress intended for disabled students to pursue their claims to a free appropriate public education solely through the mechanisms established by the statute. *Sellers,* 141 F.3d at 529.

A much higher standard of liability must be met to prove a constitutional claim. *Id.* at 530. An equal protection claim must be supported by evidence of purposeful discrimination. *Id., citing Washington v.*

---

[1] Counsel for the Plaintiffs admitted during oral argument that notice would have been due in early 2000. Since notice is due within 180 days of the occurrence of the alleged violation, it can be assumed that Plaintiffs accept that the cause of action accrued during the latter part of 1999.

*Davis*, 426 U.S. 229, 239, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976). Further, "[b]ecause the Supreme Court has yet to classify disabled persons as a suspect class, and because the Court also has not identified education as a fundamental right, a plaintiff[ ] would have to prove that a school board's decision was without any rational basis." *Id.* at 530–31, *citing City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 445–46, 105 S.Ct. 3249, 3257–58, 87 L.Ed.2d 313 (1985); *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 133–37, 93 S.Ct. 1278, 1296–99, 36 L.Ed.2d 16 (1973). The Fourth Circuit dismissed the Sellers' § 1983 claim and their attempt to recover compensatory and punitive damages not available in an action directly under the IDEA.

Perhaps because of the heightened standard required to prove a constitutional violation, Joshua did not argue in his brief or at oral argument that there exists an underlying constitutional violation on which to base his § 1983 claim. Instead, he asserts that because the IDEA lacks an enforcement mechanism following a favorable decision, he is entitled to pursue compensatory and punitive damages under 42 U.S.C. § 1983. Joshua is attempting to apply the Fourth Circuit's holding in *Robinson v. Pinderhughes*, 810 F.2d 1270 (4th Cir.1987) to his case. In *Pinderhughes*, the plaintiffs were entitled to bring a § 1983 claim in order to enforce a favorable ruling under the Education of the Handicapped Act ("EHA," IDEA's predecessor), because the statute did not contain any enforcement mechanism. The Pinderhughes received a favorable decision from their local hearing officer utilizing the administrative process established by the EHA, however, the City refused to comply with the administrative order. *Id.* 1272. The EHA provided for appeal of an adverse decision, but did not provide any enforcement mechanism for a situation where the City refused to comply with a favorable decision. *Id.* at 1273. The Fourth Circuit held that the plaintiffs were entitled to bring a § 1983 action, in this unique situation, for deprivation of a right secured by the laws of the United States. *Id.* at 1274.

The Fourth Circuit cautioned, "[o]ur decision is not approval of an end run around the EHA in order to circumvent or enlarge the remedies available under the EHA." *Id.* at 1275. The only reference to damages in the decision is in a footnote where the Fourth Circuit refers to the Supreme Court's note in *Smith v. Robinson*, 468 U.S. 992, 1020 n. 24, 104 S.Ct. 3457, 3473 n. 24, 82 L.Ed.2d 746 (1984) that damages are available in EHA cases only under exceptional circumstances. *Id.* at 1275 n. 3. The Fourth Circuit allowed the Pinderhughes to utilize § 1983 to enforce their EHA remedies.

Joshua asserts he is similarly situated to the plaintiffs in *Pinderhughes*, because there was an IEP in place for him, which the Defendants ignored. Assuming all of Joshua's factual allegations are correct, his argument still fails. Unlike the plaintiffs in *Pinderhughes*, Joshua is not seeking enforcement of IDEA remedies in Count III, rather he is seeking compensatory and punitive damages. He is attempting to do exactly what the Fourth Circuit cautioned against, make an "end run around the [IDEA] in order to circumvent or enlarge the remedies available under the [IDEA]." This was not sanctioned in *Pinderhughes*, and will not be allowed here.

Joshua's claims in Count III fail because he has not alleged a constitutional violation, and § 1983 claims cannot be based on a violation of the IDEA.

## IV. *ORDER*

For the foregoing reasons, the Court ORDERS that the Motion for Summary Judgment is hereby GRANTED, and Counts II and III are DISMISSED.

The Clerk shall mail a copy of this Order to all counsel of record.