**VIRGINIA OFFICE OF PROTECTION AND ADVOCACY, et al., Plaintiffs,**

v.

**Commonwealth of VIRGINIA, DEPARTMENT OF EDUCATION, et al., Defendants.**

**No. CIV. 3:03CV026.**

United States District Court, E.D. Virginia, Richmond Division.

May 16, 2003.

Gary Leslie Conover, Virginia Office for Protection, Richmond, VA, for plaintiffs.

Deborah Love Feild, Office of the Attorney General, Richmond, VA, for defendants.

## MEMORANDUM OPINION

### (Motions to Dismiss)

HUDSON, District Judge.

This case concerns Plaintiffs' allegations that the Virginia Department of Education and a number of its officials mishandled both a complaint review and a due process hearing that Plaintiffs initiated on behalf of several children, named and unnamed, under the Individuals with Disabilities Education Act ("IDEA" or "the Act"), 20 U.S.C. § 1400, *et. seq.* The matter is currently before the Court on Defendants' Federal Rule of Civil Procedure [hereinafter "Rule(s)"] 12(b)(1) motion to dismiss Counts I, II, III, and IV of the complaint for lack of subject matter jurisdiction and their Rule 12(b)(6) motion to dismiss Counts III and IV for failure to state a claim upon which relief can be granted. The case centers around the parties' interpretation and application of a panoply of federal and state special education statutes and regulations. The Court will begin its analysis by surveying relevant portions of the IDEA.

I. The Individuals with Disabilities Education Act

Through the IDEA, Congress provides federal funds to state and local agencies to assist with the education of disabled children. Congress conditions this funding upon each recipient state's compliance with certain educational objectives and procedures. For example, to qualify for IDEA funds a state must demonstrate that it "has in effect policies and procedures to ensure that ... [a] free and appropriate public education is available to all children with disabilities residing in the State ...."

20 U.S.C. § 1412(a)(1)(A). Moreover, the state must fashion its free and appropriate public education ("FAPE") to the unique needs of each disabled child by means of an individualized educational program, or "IEP," as mandated by 20 U.S.C. § 1414(d).

To implement the legislative intent underlying the Act, Congress delegated to every recipient state education agency ("SEA") and/or local education agency ("LEA") the responsibility of establishing certain basic, procedural safeguards meant to protect the disabled child's right to a FAPE. 20 U.S.C. § 1415. For example, the funded agency must provide the parents of a disabled child "an opportunity . . . to examine all records relating to such child and to participate in meetings with respect to the identification, evaluation, and educational placement of the child . . . and to obtain an independent educational evaluation of the child . . . ." *Id.* § 1415(b)(1). Additionally, participating SEAs and LEAs must provide the child or his parent with prior written notice, in the parent's native language, whenever the agency intends to change the child's IEP. *Id.* § 1415(b)(3) & (b)(4).

Finally, and central to the immediate case, is each state's responsibility to establish a two-tiered, administrative system of review by which to assess the appropriateness of a disabled child's education. Initially, the agency must provide "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." *Id.* § 1415(b)(6). Thereafter, the agency must allow a parent who has filed such a complaint the opportunity to initiate an impartial due process hearing, which is conducted by either the SEA or the LEA. *Id.* § 1415(f). Because this case arises from the results of two such hearings, a com-plaint resolution proceeding ("CRP") and its related due process hearing, it is important to understand the statutes and regulations that underlie each.

### A. The Complaint Resolution Procedure

In its delegation of authority, Congress created minimum standards governing a state's IDEA complaint resolution procedure. *See* 20 U.S.C. § 1221e–3; 34 C.F.R. §§ 300.660–300.662. To effectuate and define the CRP's procedural requirements within the Commonwealth of Virginia, the General Assembly enacted Title 8 of the Virginia Administrative Code § 20–80–78. Under this provision, the Virginia Department of Education ("VDOE") maintains and operates the CRP system, and the Superintendent for Public Instruction supervises it. 8 Va. Admin. Code § 20–80–78(A).

According to both federal and state law, any individual or organization may initiate a CRP by filing a complaint, provided the complaint is in writing and is signed by the complainants. *Id.* § 20–80–78(B). The complaint must contain "a statement that a local educational agency has violated the [IDEA] or [the relevant] special educational regulations," listing what, if any, facts support such an accusation. *Id.* It must also address an action that occurred within the preceding year and include all relevant, supporting documents. *Id.; see also* 34 C.F.R. § 300.661. The SEA is required to provide certain minimal, procedural protections during a complaint resolution proceeding including conducting an on-site investigation, if necessary, offering the complainants an opportunity to submit additional information in support of their complaint, reviewing all relevant information and making an independent determination regarding the local agency's compliance with the IDEA, and issuing a written

opinion within sixty (60) days after the complaint is filed. 34 C.F.R. § 300.661. The sixty(60) day time limit may be extended under "exceptional circumstances." *Id.* § 300.661(4)(b)(1).

In Virginia, the VDOE is responsible for reviewing both the complaint and any reply filed by the LEA. 8 Va. Admin. Code § 20–80–78(C). It then must conduct an investigation to determine whether the LEA has complied with the applicable laws and regulations. *Id.* At the conclusion of the investigation, the VDOE must make a determination of compliance or noncompliance and notify the parties in writing of its conclusions and findings of fact. *Id.* Parties who are not satisfied with the decision have thirty (30) calendar days to appeal to the VDOE in accordance with established Virginia Board of Education procedure. *Id.* § 20–80–78(G). Neither the governing federal law nor the applicable state statute provides for judicial review of a CRP proceeding or decision.

### B. The Due Process Hearing

As a second forum for review, the IDEA requires that any parent who files a complaint must also be allowed the opportunity to participate in an impartial due process hearing, which is conducted by a designee of either the SEA or the LEA. 20 U.S.C. § 1415(f). To implement this component of the IDEA, the Virginia General Assembly enacted Title 22.1 of the Virginia Code § 214 and delegated the responsibilities of supervision and implementation to the Virginia Board of Education.

Unlike the wide net cast by CRP regulations, only a parent or child who has previously filed a complaint can request a due process hearing. 20 U.S.C. § 1415(f); Va. Code § 22.1–214(B). This hearing is more formal than is a CRP hearing and is more adversarial in nature. For example, all parties to a due process hearing have:

(1) the right to be accompanied and advised by counsel and by individuals with special knowledge or training with respect to the problems of children with disabilities;

(2) the right to present evidence and confront, cross-examine, and compel the attendance of witnesses;

(3) the right to a written, or, at the option of the parents, electronic verbatim record of such hearing; and

(4) the right to written, or, at the option of the parents, electronic findings of fact and decisions (which findings and decisions shall be made available to the public consistent with the requirements of [20 U.S.C. § 1417(c)] (relating to the confidentiality of data, information, and records) and shall also be transmitted to the advisory panel established pursuant to section [20 U.S.C. § 1412(a)(21)]).

20 U.S.C. § 1415(h).

Each participating state may delegate its responsibility to conduct due process hearings to a SEA– or an LEA-designee, typically referred to as a hearing examiner. 20 U.S.C. § 1415(f)(1). The decision of a hearing examiner is final, except that any party involved in the hearing who is displeased with the examiner's decision may appeal. 20 U.S.C. § 1415(g) & (i).

When the due process hearing is conducted by a designee of the LEA, an aggrieved parent may appeal to the SEA which must conduct an independent review of the decision. 20 U.S.C. § 1415(g). Any party who is dissatisfied with the SEA's appellate finding may then appeal to either a competent state court or to a United States District Court. 20 U.S.C. § 1415(i)(1)(B). If, however, the due process hearing is conducted by a SEA-designee, an aggrieved party may appeal immediately to the appropriate United States District Court. 20 U.S.C. § 1415(i)(2). "The district courts of the United States

shall have jurisdiction of [due process appeals] without regard to the amount in controversy." 20 U.S.C. § 1415(i)(3)(A).

## II. Procedural History of This Case

On January 14, 2000, Plaintiff Virginia Office of Protection and Advocacy ("VOPA") filed a complaint ("the Complaint") with Defendant Jo Lynne DeMary ("DeMary"), the Virginia Superintendent of Public Instruction, on its own behalf, on behalf of a number of parents including Plaintiffs Cynthia Barbieri and Pat Passalacqua, and their children, and on behalf of a class of unnamed children who were all students in the Fairfax County Public Schools ("FCPS"). Comp. ¶ 11. The Complaint contested FCPS's educational placement of those children, named and unnamed, who were classified as moderately mentally retarded. *Id.* Plaintiffs forwarded the Complaint to the VDOE's Office of Special Programs, within the Office of Due Process and Complaints, for review, investigation, and the issuance of a decision. Comp. ¶ 14. Defendants Judith Douglas, Director of the VDOE's Office of Due Process and Complaints, and VDOE Complaints Specialist Thomas Dempsey performed the investigation. Comp. ¶ 16.

On August 3, 2000, Defendant VDOE's Office of Special Programs issued decisions on the class and individual portions of the complaint, ruling against the plaintiffs on all issues. Comp. ¶ 20. Plaintiffs first learned of this decision on August 21, 2000, when Plaintiff VOPA called the Office of Special Programs. Comp. ¶ 23. Four days later, VOPA finally received a written copy of the VDOE's decision. *Id.* Several times thereafter, VOPA asked that VDOE officials, including DeMary and Defendant Douglas Cox, Assistant Superintendent for Special Education and Student Services, reconsider their position and undertake additional investigation into the matter. Comp. ¶ 24. In August of 2001, DeMary issued a statement denying these requests because "no additional action [was] required by the VDOE." *Id.*

On August 20, 2001, Plaintiffs instituted an administrative due process proceeding "seeking review and reversal of the [Complaint decision] on grounds, *inter alia,* that such decisions were not based on consideration of 'all relevant documentation and information,' as required by Federal and State regulations, because VDOE failed to conduct an adequate investigation of the ... complaint to obtain such 'relevant documentation and information' and otherwise failed to consider relevant documentation and information presented to it by the ... Complainants." Comp. ¶ 25. Over two months later, after receiving testimony, evaluating exhibits, and otherwise conducting a full hearing, the designated hearing examiner concluded that because he lacked jurisdiction to grant appellate relief from a CRP decision, he had no option but to dismiss the Complaint. Comp. ¶ 29. Thereafter, Plaintiffs filed the instant action.

## III. Defendants' Motions to Dismiss

This case is presently before the Court on a number of defense motions to dismiss. First, Defendants move to dismiss Counts I, II, III, and IV pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. Second, they move to dismiss Counts I and III based on sovereign immunity. Finally, Defendants move to dismiss Counts III and IV under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The Court will first consider the motions to dismiss based on sovereign immunity and lack of subject matter jurisdiction. If sovereign immunity is inapplicable and the Court's exercise of subject matter jurisdiction is proper, the Court will then decide whether, as a matter of law, Counts III and IV state a claim upon which it can grant relief.

A. Motions to Dismiss Count I—Mishandling of the CRP—Based on Sovereign Immunity and Lack of Subject Matter Jurisdiction

In Count I of their complaint, Plaintiffs allege that in conducting the complaint resolution proceeding, Defendants failed to comply with both the federal CRP regulations and the Virginia Administrative Procedures Act. As a distinct sub-part of Count I, Plaintiffs allege that the federal CRP regulations, as they are written, are void for vagueness and constitute an unlawful delegation of authority.

Defendants urge the Court to dismiss Count I on two grounds. First, because the Defendant VDOE is a state agency and Defendants DeMary, Douglas, and Cox were acting in their official capacities in conducting and supervising the CRP, they maintain that they are protected by Eleventh Amendment immunity. Second, Defendants move to dismiss each subpart of Count I for lack of subject matter jurisdiction. The Court will address these challenges, in order, below.

1. Motion to Dismiss Based on Sovereign Immunity

■■■ Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (citations omitted). Consequently, "[t]he only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may

possess, such as the Eleventh Amendment." *Id.* at 167, 105 S.Ct. 3099.

■■■ Absent consent, the Eleventh Amendment prohibits the naming of a state or one of its agencies or departments as a defendant in a suit. *Pennhurst State Sch. & Hosp. v. Halderman, ("Pennhurst II"),* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (citations omitted). However, in a statute creating a right of action, "Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute." *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 242, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985).

Until 1990, states were immune from suit under the IDEA because the statutory language did "not evince an unmistakably clear intention to abrogate the state's constitutionally secured immunity from suit." *Dellmuth v. Muth,* 491 U.S. 223, 232, 109 S.Ct. 2397, 105 L.Ed.2d 181 (1989). To correct the resulting inequity of mandating state compliance with the IDEA's provisions while at the same time denying litigants the right to enforce their rights, Congress enacted 20 U.S.C. § 1403. Presently, according to this statute, "[a] State shall not be immune under the eleventh amendment to the Constitution of the United States from suit in Federal court for a violation of [the IDEA]." 20 U.S.C. § 1403. Thus, with respect to Plaintiffs' Count I claims related to alleged violations of the IDEA, Defendants do not enjoy Eleventh Amendment immunity, and the Court will deny their motion to dismiss on that basis.

■■■ With respect to Plaintiffs' allegations that Defendants violated the Virginia Administrative Code ("VAC") and/or the Virginia Administrative Procedures Act ("VAPA"), however, the converse is true. In the words of the United States Supreme Court, "it is difficult to think of a

greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Pennhurst II,* 465 U.S. at 106, 104 S.Ct. 900. This Court agrees and refuses to ignore the sovereignty of the state that the Eleventh Amendment was designed to protect.

■ After analyzing the *Ex Parte Young* exception to sovereign immunity, also raised by Plaintiffs here, the Supreme Court found it inapplicable to a suit against state officials arising out of state law. *Pennhurst II,* 465 U.S. at 107, 104 S.Ct. 900.[1] Instead, a majority of the *Pennhurst II* Court concluded that a pendent claim against state agencies and officers seeking injunctive relief for a violation of *state* law is barred by the Eleventh Amendment. Following *Pennhurst II,* as it must, this Court holds that the Eleventh Amendment shields Defendants from allegations that they violated the Virginia Administrative Code and/or the Virginia Administrative Procedures Act. Consequently, the relevant portions of Count I, that is, those averments relating to Defendants' violations of the VAC (Comp.¶¶ 34, 35, 41, 43) and those relating to the VAPA (Comp.¶¶ 47–49), will be dismissed.

2. Motion to Dismiss Remaining Claims for Lack of Subject Matter Jurisdiction

Defendants' second basis for moving to dismiss Count I of the complaint is the Court's lack of subject matter jurisdiction. Plaintiffs urge the Court to invoke jurisdiction over Count I under 20 U.S.C. § 1415(i)(3)(A) [hereinafter "§ 1415"] and 28 U.S.C. §§ 1331 and 2201. Defendants contest subject matter jurisdiction under each statutory section pled. The Court, therefore, will analyze each objection in turn.[2]

■ In moving to dismiss Count I for lack of subject matter jurisdiction under 20 U.S.C. § 1415, Defendants argue that because § 1415 does not expressly create a private cause of action to challenge CRP determinations, this Court has no subject matter jurisdiction over such a claim. What Defendants' argument overlooks, however, is the subtle, procedural distinction between the court's power to exercise jurisdiction over a particular subject matter and its ability to fashion a remedy.

■ "It is firmly established ... that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.,* the courts' statutory or constitutional *power* to adjudicate the case." *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (citations omitted). Moreover,

the District Court has jurisdiction if 'the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another,' unless the claim 'clearly appears to be immaterial and made solely for the

---

1. The Supreme Court, in *Ex Parte Young,* 209 U.S. 123, 154, 28 S.Ct. 441, 52 L.Ed. 714 (1908), created an exception to recognized sovereign immunity protections according to the doctrine of *Smyth v. Ames,* 169 U.S. 466, 518–19, 18 S.Ct. 418, 42 L.Ed. 819 (1898), because, as that doctrine holds, a suit challenging the constitutionality of a state official's action is not one against the state within the meaning of the Eleventh Amendment.

2. Plaintiffs also assert that the Court has jurisdiction under 28 U.S.C. § 1367 for pendent state law claims. Because the Court has already found that Defendants are immune from state law claims, however, the Court need not analyze jurisdiction under that statute.

purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.'

*Id.* (citations omitted). *See also Verizon Md. Inc. v. PSC,* 535 U.S. 635, 642–643, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002).

Here, Plaintiffs' Count I claims emanate from a multi-tiered combination of federal and state laws and regulations. After reviewing the IDEA, its implementing laws and statutes, and the resulting case law, this Court does not find Plaintiffs' Count I claims to be "immaterial," "insubstantial," or "frivolous." Moreover, § 1415(i)(3)(A) says that "[t]he district courts of the United States shall have jurisdiction of actions brought under *this section* without regard to the amount in controversy." The Court emphasizes the words "this section" because they refer to the whole of § 1415. This language expressly empowers a district court to invoke jurisdiction over the subject matter of *any* action challenging the procedural protections described in § 1415.

To be sure, there exists an important distinction between subject matter jurisdiction and the existence of a cause of action. According to the plain language of the statute, the Court has the *power* to review Count I's claims. That does not mean, however, that through § 1415 Congress gave Plaintiffs *a private right of action* to challenge the result of a CRP. Defendants did not move to dismiss Count I for failure to state a claim upon which relief can be granted, therefore that issue is not before the Court. Defendants do, however, raise such a challenge in their Rule 12(b)(6) motion to dismiss Count III. The Court will articulate its conclusions with respect to that issue after it analyzes Defendants' motions to dismiss Count III.

■ With respect to Count I, however, the Court finds that its exercise of subject matter jurisdiction is appropriate under 20 U.S.C. § 1415(i)(3)(A); therefore, Defen-

dants' Rule 12(b)(1) motion to dismiss Count I's IDEA claims will be denied. Accordingly, the Court need not reach the issue of the appropriateness of exercising jurisdiction under 28 U.S.C. § 1331. Furthermore, Plaintiffs' suggestion that the Court exercise jurisdiction over Counts I, II, III, and IV based on the Declaratory Judgment Act of 1934, 28 U.S.C. § 2201, is not appropriate. Although § 2201 gives courts the authority to fashion and grant declaratory relief, it does not supply this Court, or any court, with jurisdiction. *See Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240, 57 S.Ct. 461, 81 L.Ed. 617 (1937); *Cook v. Arentzen,* 582 F.2d 870, 876 (4th Cir.1978). Therefore, although the defendants' motion to dismiss Count I for lack of subject matter jurisdiction will be denied, the Court will only exercise its jurisdiction over Count I under 20 U.S.C. § 1415.

B. Motion to Dismiss Count II—42 U.S.C. § 1983 Claim—for Lack of Subject Matter Jurisdiction

■ Plaintiffs bring the second count of their complaint under the Civil Rights Act, 42 U.S.C. § 1983 [hereinafter " § 1983"]. Section 1983 of the Civil Rights Act guarantees that

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress …."

*Id.*

As a basis for their motion to dismiss Count II, Defendants rely on *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), in which the Supreme Court stated that parties may not sue un-

der § 1983 for violations of the IDEA. *Id.* at 1012–1013, 104 S.Ct. 3457. Defendants' reliance on *Smith,* in the context of a motion to dismiss for lack of jurisdiction, is misplaced. Jurisdiction was not an issue that the *Smith* Court considered. Thus, while the *Smith* holding might apply in an analysis of the validity of Plaintiffs' § 1983 claim, it does not support Defendants' Rule 12(b)(1) motion to dismiss for lack of jurisdiction.

■■■ Here again, the defendants blur the distinction between a court's Article III power to review an action and its ability to grant relief for that claim as it is pled. Jurisdictional determinations are made not on the merits of an action but after examining the grounds on which federal jurisdiction is invoked. *Flanders v. Coleman,* 250 U.S. 223, 228, 39 S.Ct. 472, 63 L.Ed. 948 (1919). Plaintiffs suggest that the Court has subject matter jurisdiction over their § 1983 claim under 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1343 (Civil Rights Act jurisdiction). Because both statutes give this Court the power to review the subject matter of Count II, the invocation of either is appropriate here. Consequently, Defendants' Rule 12(b)(1) motion to dismiss Count II for lack of subject matter jurisdiction will be denied.

C. Motions to Dismiss Count III— Challenge to CRP Outcome—for Lack of Subject Matter Jurisdiction and for Failure to State a Claim upon Which Relief May Be Granted

■■■ The third count of Plaintiffs' complaint alleges that, "[n]otwithstanding Defendants' failure to conduct an adequate investigation of the CRP Complaint and thereby to obtain and consider all relevant documentation and information, Defendants' decisions on the CRP Complaint are contrary to the law and the evidence presented in the CRP and due process proceedings." Comp. ¶ 68. Defendants move to dismiss Count III pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction and pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.[3] Because the Court previously determined that it has subject matter jurisdiction over IDEA claims under 20 U.S.C. § 1415, Defendants' motion to dismiss on that basis will be denied. The more interesting issue raised by Defendants' motions is whether § 1415 of the IDEA creates a private, federal right of action for those aggrieved by the results of a CRP.

As both Plaintiffs and Defendants note, the IDEA is Spending Clause legislation. *See Virginia Dep't of Educ. v. Riley,* 106 F.3d 559, 566–68 (4th Cir.1997) (*en banc*). Accordingly, § 1411 of the Act directs the Secretary of Education to make grants to States "to assist them to provide special education and related services to children with disabilities in accordance with this subchapter." 20 U.S.C. § 1411(a)(1). As a federal spending program, the IDEA operates "much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions." *Pennhurst State Sch. & Hosp. v. Halderman ("Pennhurst I"),* 451 U.S. 1, 17, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). Consequently, under the IDEA a state is eligible for financial assistance only if it first "demonstrates to the satisfaction of the Secretary" that, among other things, "children with disabilities and their par-

---

**3.** The defendants also aver that Count III should be dismissed because Defendants enjoy Eleventh Amendment immunity as to the claims alleged therein. As the Court mentioned previously, 20 U.S.C. § 1403(a) constitutes an express waiver of sovereign immunity for IDEA-related claims; therefore, the Court will deny Defendants' motion to dismiss Count III on the basis of immunity.

ents are afforded the procedural safeguards required by section 1415." 20 U.S.C. § 1412(a)(6)(A). In the immediate case, Defendants argue that these required procedural safeguards do not include judicial review of a complaint resolution proceeding.

■ In *Pennhurst I,* the Supreme Court explained how the courts should interpret statutes, such as the IDEA, that were enacted pursuant to the spending power. "The legitimacy of Congress' power to legislate under the spending power ... rests on whether the State voluntarily and knowingly accepts the terms of the 'contract.'" *Pennhurst I,* 451 U.S. at 17, 101 S.Ct. 1531. As the Fourth Circuit reasoned in *Sellers v. School Bd. of City of Manassas,* 141 F.3d 524 (4th Cir.1998), a state cannot knowingly accept conditional federal funds without first accepting the conditions being imposed upon it. *Id.* at 531 (citations omitted). Thus, Congress must condition the state's receipt of federal funds clearly and unambiguously. *Id.* This concept is commonly known as *Pennhurst's* "clear statement rule." The rule requires this Court to ask whether the Commonwealth of Virginia knew, prior to subjecting itself to the IDEA's funding conditions, that its school boards' and officials' handling of the complaint resolution process could be subjected to judicial review. The answer, in short, is that it did not.

Although the IDEA expressly creates a private right of action for those aggrieved by the due process procedure, it does not give the same right to those participating in a CRP. *See* 20 U.S.C. § 1415(i)(2)(A). Not only was this intentional on the part of the IDEA's drafters, but it makes sense in the context of the two-tiered review sys-

tem Congress created. In other words, the complaint resolution process is designed to be an informal forum for review. There is no requirement that the proceeding be recorded in anticipation of court scrutiny. Any interested party is permitted to participate, and the parties' procedural protections are minimal at best. In effect, the CRP is similar to an informal settlement conference. As such, it is intended to serve as a forum by which parties can meet and confer without the interference of the courts.

By contrast, a due process hearing is designed to be both more formal and more adversarial. A due process hearing is guaranteed only to the complaining parents and children and includes a right to qualified counsel; a right to confront, cross-examine, and compel the attendance of witnesses; a right to a verbatim record of the hearing; and a right to a written opinion. *Id.* § 1415(h). The IDEA expressly delineates the parents' right to appeal from a due process decision, and it empowers the parties to bring suit in federal court at the conclusion of the appellate process. *Id.* § 1415(g) & (i)(2). The contrasts between the two proceedings could not be more obvious.

■ For this Court to now decide that § 1415, even in its silence, intended to create a private right of action for parties to challenge an otherwise-informal complaint resolution process would not only defy the "clear statement rule," it would second-guess the drafters' intentions. This Court will not read into the Act what is not expressly written therein, thereby imposing upon the Virginia Department of Education and its officials a funding condition they could not have previously anticipated.[4]

---

4. In so doing, this Court finds unpersuasive the Second Circuit opinion relied upon by Plaintiffs. *See Beth V. v. Carroll,* 87 F.3d 80

(3d Cir.1996). In *Beth V.,* the Second Circuit held that complainants enjoy an express right of action under § 1415 of the IDEA to chal-

In construing the boundaries of § 1415, the Court turned to the United States Supreme Court for guidance. That Court, when declining to recognize an equal protection claim in another IDEA case, noted:

> In light of the comprehensive nature of the procedures and guarantees set out in the [IDEA] and Congress' express efforts to place on local and state educational agencies the primary responsibility for developing a plan to accommodate the needs of each individual handicapped child, we find it difficult to believe that Congress also meant to leave undisturbed the ability of a handicapped child to go directly to court with [an undelineated cause of action]. Not only would such a result render superfluous most of the detailed procedural protections outlined in the statute, but, more important, it would also run counter to Congress' view that the needs of handicapped children are best accommodated by having the parents and the local education agency work together to formulate an individualized plan for each handicapped child's education. No federal district court ... can duplicate that process.

*Smith*, 468 U.S. at 1011–1012, 104 S.Ct. 3457 (finding that Congress intended the IDEA's elaborate procedural mechanism to be the exclusive manner by which a plaintiff may pursue claims to a free appropriate public education).

Consequently, it is this Court's opinion that 20 U.S.C. § 1415 does not create a private cause of action by which to challenge a CRP. Thus, Defendants' Rule 12(b)(6) motion to dismiss Count III of Plaintiffs' Complaint for failure to state a claim will be granted.

**D. Motions to Dismiss Count IV—Challenges to Due Process Hearing—for Lack of Subject Matter Jurisdiction and for Failure to State a Claim Upon Which Relief Can Be Granted**

In the fourth and final Count of their complaint, Plaintiffs argue, first, that the hearing examiner's decision to dismiss their due process action for lack of jurisdiction was erroneous. Comp. ¶ 74. In support of their position, Plaintiffs aver that because their CRP complaint presented issues relating to the educational placement of children with disabilities, an appeal from that decision also addressed matters relating to the placement of the children. *Id.* ¶¶ 71–73. Relying on 20 U.S.C. § 1415(b)(6), 34 C.F.R. § 300.507(a)(1), and 8 VAC § 20–80–78(B), Plaintiffs then argue that because the due process examiner is statutorily empowered to assess a child's placement, and the CRP in issue related to educational placement, the examiner therefore had appellate jurisdiction over the CRP outcome. Comp. ¶ 74. This argument stretches logic beyond its bounds of elasticity.

Defendants move to dismiss Count IV for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. First, with respect to jurisdiction, the Court will refer back to its previous examination of subject matter jurisdiction. In doing so, the Court again notes that § 1415(i)(3)(A) gives the district courts of the United States jurisdiction

---

lenge systemic CRP deficiencies and to request system-wide relief. *Id.* at 88. Although it has not expressed its position on the issue, this Court anticipates that the Fourth Circuit, a strict construction circuit, would disagree. In the words of the Fourth Circuit, "Our interpretation of section 1415[] is ... shaped by the rules of construction reserved for federal statutes placing funding conditions on States." *Sellers*, 141 F.3d at 531. Thus, where the IDEA fails to state a private right of action with clarity, none should be implied by the courts. *Id.* at 532.

over "actions brought under [the IDEA's procedural safeguards] section without regard to the amount in controversy." Consequently, and for the reasons previously stated, Defendants' Rule 12(b)(1) motion to dismiss Count IV for lack of subject matter jurisdiction will be denied.

 Next, Defendants move to dismiss Count IV for failure to state a claim upon which relief can be granted. In support of their motion, Defendants first contend that the IDEA does not authorize judicial review of a CRP outcome, therefore it precludes judicial review of a due process decision *related* to a CRP outcome. Second, Defendants argue that because the hearing examiner's decision was manifestly correct, no valid due process action lies. Of these arguments, the Court finds the latter somewhat more persuasive than the former.

There is no dispute here that Plaintiffs filed their due process action in an attempt to contest the CRP outcome. It is equally clear that the plaintiffs neither appealed the CRP decision to the VDOE, as is allowed by 8 VAC § 20–80–78(G), nor asserted their due process rights with respect to the Fairfax County Public Schools' placement of the named children. Instead, Plaintiffs used their IDEA due process hearing to request systemic relief from perceived inequities in the Defendants' handling of various complaint resolution proceedings. With that as a backdrop, the Court finds that the core of the immediate debate comes from the due process examiner's written decision, issued on October 31, 2002, which states that, "1. A hearing officer does not have authority to hear and decide appeals from CRP decisions ... 3. Due Process is separate and distinct from the Complaint Resolution Process."

Plaintiffs' focus, in this portion of Count IV, is on whether the hearing examiner had jurisdiction to hear and to grant relief on a CRP appeal. Reviewing both the plain language of § 1415's procedural protections and the relevant segments of 8 VAC § 20–80–78, the Court agrees with the hearing examiner's conclusion; he did not have appellate authority.

Section 1415 of the IDEA establishes not only a framework for formal and informal review hearings but also the parameters for who can appeal, to whom, and from which hearings. The controlling language of the VAC is clear: the CRP is to be an informal, settlement-type process whose only direct appeal is to the VDOE. 8 Va. Admin. Code § 20–80–78. In Virginia, any disfavored party who participates in a CRP has thirty days from the date of the decision to appeal to the VDOE. *Id.* § 20–80–78(G). In this case, Plaintiffs ignored that option.

 On the other hand, if a CRP outcome does not satisfy their dispute, complaining parents can invoke their due process rights.[5] At that time, the parents may hire counsel, request subpoenas, utilize experts, and engage in an on-the-record, adversarial, *de novo* type hearing. In this case, instead of utilizing their due process hearing as a *de novo* opportunity to challenge the FCPS's placement of their children, the plaintiff parents used it to contest their CRP defeat. In the words of the due process hearing examiner, "This is, perhaps, to be regretted as [had these parents filed appropriate due process actions] they would have appeared before an

---

5. Defendants object to Plaintiff VOPA's standing to challenge the due process outcome in this case. Defendants' objection is well-taken. Only the parents of a disabled child can be "aggrieved parties" who have a private cause of action under 20 U.S.C. § 1415(f) and (i). Consequently, the Court will grant Defendants' Rule 12(b)(6) motion to dismiss Plaintiff VOPA from Count IV for failure to state a claim upon which relief can be granted.

impartial hearing officer and, depending upon the evidence, may have gained [*sic*] relief sought."

This Court has found it written nowhere—not in statute or in case law—that a due process examiner has the power to oversee a state's complaint resolution process. More importantly, the Court finds it impossible to rule that a hearing examiner can review a CRP process when that examiner has no statutory authority to grant appellate relief.

By the same token, it almost goes without saying that to allow a due process hearing examiner appellate power over a CRP decision would wreak havoc on the IDEA's two-tiered system. For instance, the statute and the regulations make it clear that only the complaining parents have access to a due process hearing. Thus, under the Plaintiffs' interpretation of the IDEA, only *some* of the parties aggrieved by a CRP will have a right of appeal to the due process examiner and, therefore, the right to appeal to the courts. Thus, Plaintiffs' proposed judicial enlargement of the Act's appellate process could have constitutional implications. This Court cannot accept such an interpretation.

Moreover, Title 34 C.F.R. § 300.507 instructs that a due process hearing should relate to "the identification, evaluation or educational placement of a child with a disability, or the provision of FAPE [free appropriate public education] to the child." Here, despite their argument to the contrary, Plaintiffs' appeal of the CRP outcome had nothing to do with the named children or their educational placement. Consequently, this Court finds that the due process examiner could not have granted the relief Plaintiffs requested, and his dismissal was appropriate. Thus, with respect to their Count IV challenge to the due process dismissal, Plaintiffs have not stated a claim upon which this Court can grant relief, and the Court will grant Defendants' Rule 12(b)(6) motion to dismiss.

■ Finally, and as an apparent afterthought to the substantive portion of Count IV, Plaintiffs allege that the defendants and the due process examiner violated their statutory rights by committing a trio of procedural errors. First, Plaintiffs contend that the defendants failed to timely notify them that additional investigation was unnecessary. Comp. ¶ 75. Second, the hearing officer unfairly denied Plaintiffs access to the CRP files of unnamed children. *Id.* ¶ 76. And finally, Plaintiffs maintain that the defendants failed to timely appoint a hearing officer to preside over the due process proceeding. Comp. p20, ¶ 6. The Court has not overlooked these single-sentence allegations. Even assuming, *arguendo*, that such allegations are true, however, Plaintiffs failed to file a valid due process complaint. The Court finds, therefore, that any such error was harmless. Consequently, Defendants' Rule 12(b)(6) motion to dismiss the procedural complaints included in Count IV will also be granted for Plaintiffs' failure to state a claim on which this Court can grant relief.

### IV. Conclusion

To sum up, for the reasons stated herein this Court will deny Defendants' Rule 12(b)(1) motions to dismiss Counts I, II, III, and IV for lack of subject matter jurisdiction. With respect to all state law claims included in Counts I and III, the Court will grant Defendants' motion to dismiss because they are protected by Eleventh Amendment sovereign immunity. Finally, the Court will grant Defendants' Rule 12(b)(6) motion to dismiss Plaintiffs' IDEA claims included in Counts III and IV for failure to state a claim upon which

relief can be granted. An appropriate Order will accompany this opinion.