630 F.2d 209
 Susan Mitschele JENSEN and Harry A. Specht, as Co-executors
of the Estate of Robert J. Mitschele, Appellants,
v.
MITSCHELE CONTRACTING CO., Mitsco, Inc., Ralco, Inc.,
Deerco, Inc., Larwood Inc., Mitschele Construction Corp.,
Exex, Inc., Chexco, Inc., Ramoe, Inc., Xenco, Inc., Redmit,
Inc., Wason, Inc., M-1-1, Inc., and/or M-One-One, Inc.,
Demit, Inc., Ralph E. Mitschele, Norman F. Mitschele, Robert
V. Doran, Rubin-Goertz & Co., Sills, Beck, Cummis, Radin & Tishman.
 No. 80-1052.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6) Sept. 16, 1980.
Decided Sept. 26, 1980.
 
 Douglas S. Brierley, Schenck, Price, Smith & King, Morristown, N. J., for appellants; Thomas W. Greelish, Morristown, N. J., of counsel.
 Jerald D. Baranoff, Sills, Beck, Cummis, Radin & Tischman, P. A., Newark, N. J., for appellees.
 Before ALDISERT, ROSENN and GARTH, Circuit Judges.
 OPINION OF THE COURT
 PER CURIAM:
 
 
 1
 This appeal requires us to decide if a demand by personal representatives of a decedent for access to corporate papers for the purpose of preparing a federal estate tax return constitutes a case or controversy arising under the "laws of the United States" in order to confer federal subject matter jurisdiction under 28 U.S.C. §§ 1340[1] and 1331(a).[2] Appellants Susan Mitschele Jensen and Harry A. Specht, Co-Executors of the Estate of Robert J. Mitschele, filed a complaint in the district court seeking access to financial records of the appellee corporations. Decedent Robert Mitschele and his brothers, appellees Ralph E. and Norman F. Mitschele, purportedly owned the stock of each of the corporations in three equal parts at the time of his death. Appellants' avowed purpose in seeking the access is to prepare accurate federal estate tax returns. The district court dismissed the action for want of subject matter jurisdiction. Jensen and Specht appeal. Because appellants rely on the same analysis and authority to support their claim of jurisdiction under both sections, a single discussion will answer both arguments.
 
 
 2
 At the heart of the controversy between these parties is an alleged "buy-out" agreement made by the decedent and his brothers approximately one month before his death. By that agreement, each brother bound himself and his estate to sell his stock to the others for $200,000.00 at his death. Appellants believe that the true value of the decedent's stock at his death was substantially greater than this figure, and that they may be entitled to set aside the buy-out agreement. Alternatively, they agrue that the buy-out agreement caused a transfer to Robert Mitschele's brothers, at his death, of the difference between the true value of Robert's holdings and $200,000.00, and that the estate will be liable for tax on the amount of that transfer.
 
 
 3
 We believe that Judge Biunno correctly characterized this action in the proceedings below:
 
 
 4
 I don't see federal jurisdiction. The fact that the proper value of this stock, if he own(ed) stock, will have an influence on how much his estate taxes are, doesn't make this a federal case at this point, because the major point is that the executors, or co-executors, are interested in marshaling the assets of the estate, which is a state function through the Probate court or through the Chancery Division. Depending on what success or failure ensues with those efforts, they may pay more or less federal tax, which is really a consequence of the estate matter.
 
 
 5
 App. at 31a. Like Judge Biunno, we believe that appellants' true interest is in marshaling the assets of the estate. When appellants complete that function, federal estate tax consequences will follow. The larger the size of the estate, the greater will be the potential estate tax liability. That potential liability, however, does not create federal question jurisdiction in these proceedings. If it did, every executor could invoke federal jurisdiction in every attempt to recover or reclaim assets, or to enforce a contract, or to seek damages for a tort, merely by asserting that the proceeding will have an impact on federal estate tax liability. In a somewhat different context, Justice Cardozo wrote:
 
 
 6
 If we follow the ascent far enough, countless claims of right can be discovered to have their source or their operative limits in the provisions of a federal statute or in the Constitution itself with its circumambient restrictions upon legislative power. To set bounds to the pursuit, the courts have formulated the distinction between controversies that are basic and those that are collateral, between disputes that are necessary and those that are merely possible. We shall be lost in a maze if we put that compass by.
 
 
 7
 Gully v. First National Bank, 299 U.S. 109, 118, 57 S.Ct. 96, 100, 81 L.Ed. 70 (1936).
 
 
 8
 To follow the appellants' reasoning in this case far enough would be to create federal jurisdiction over countless claims having an impact on the parties' rights under federal law, especially federal tax law. When the federal consequence is merely "collateral" to the underlying claim of right, those claims simply do not arise under federal law. Although so labelling a matter cannot be allowed to obscure the need for the thoughtful analysis,[3] we are confident that in this case the federal consequences can be characterized accurately as collateral to the fundamental dispute.
 
 
 9
 Appellants assert that the district court has jurisdiction because access to the corporate records is necessary to enable them to comply with obligations imposed by federal law. They purport to find federal obligations in Internal Revenue Code 26 U.S.C. § 6001[4] and Treasury Reg. 26 C.F.R. § 20.6001-1.[5] Appellants read too much into these sections; to assist their efforts to marshall the assets of this estate, they would have us impose on all executors an obligation greater than Congress or the Internal Revenue Service has ever created. This we decline to do.
 
 
 10
 Section 6001 authorizes the Secretary of the Treasury to promulgate regulations such as § 20.6001-1, and to require the filing of returns, production of statements, and keeping of records. It does not oblige appellees to furnish the executors with the records in this case. The regulation does create an affirmative duty on appellants, as executors, "to furnish, upon request, copies of any documents in (their) possession . . . relating to the estate" and "copies of balance sheets or other financial statements obtainable by (them) relating to the value of stock . . . ." 26 C.F.R. § 20.6001-1(b) (emphasis added). It does not invest the appellants with a right of action to obtain any records or documents, nor does it compel them to produce records that are not "obtainable." Subsection (c) of the regulation confers the power to obtain records or documents from third parties on the district director of the IRS, but not on executors of estates.
 
 
 11
 Appellants' position, in sum, is that federal subject matter jurisdiction exists because their cause of action arises under federal law. Federal law gives them no right of action; therefore, they have no right to invoke federal jurisdiction. The dispute between these parties is a matter for the state courts, and we are informed that a state court action seeking the same relief is pending. Perceiving no case or controversy arising under federal law, we leave the appellants to seek redress in that proceeding.
 
 
 12
 The judgment of the district court ordering the case dismissed for lack of subject matter jurisdiction will be affirmed.
 
 
 
 [1]
 Section 1340 provides:
 The district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue . . . .
 
 
 [2]
 Section 1331(a) provides:
 The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States . . . .
 
 
 [3]
 See Cohen, The Broken Compass: The Requirement that a Case Arise "Directly" under Federal Law, 115 U.Pa.L.Rev. 890, 905 (1967)
 
 
 [4]
 Section 6001 provides in relevant part:
 Every person liable for any tax imposed by this title . . . shall keep such records, render such statements, make such returns, and comply with such rules and regulations as the Secretary may from time to time prescribe. Whenever in the judgment of the Secretary it is necessary, he may require any person, by notice served upon such person or by regulations, to make such returns, render such statements, or keep such records, as the Secretary deems sufficient to show whether or not such person is liable for tax under this title. . . .
 
 
 [5]
 Treasury Regulation § 20.6001-1 provides:
 (a) It is the duty of the executor to keep such complete and detailed records of the affairs of the estate for which he acts as will enable the district director to determine accurately the amount of the estate tax liability. All documents and vouchers used in preparing the estate tax return . . . shall be retained by the executor so as to be available for inspection whenever required.
 (b) In addition to filing an estate tax return . . . the executor shall furnish such supplemental data as may be necessary to establish the correct estate tax. It is therefore the duty of the executor (1) to furnish, upon request, copies of any documents in his possession (or on file in any court having jurisdiction over the estate) relating to the estate, appraisal lists of any items included in the gross estate, copies of balance sheets or other financial statements obtainable by him relating to the value of stock, and any other information obtainable by him that may be found necessary in the determination of the tax . . . . Failure to comply with such a request will render the executor liable to penalties (see section 7269), and proceedings may be instituted in the proper court of the United States to secure compliance therewith (see section 7604).
 (c) Persons having possession or control of any records or documents containing or supposed to contain any information concerning the estate, or having knowledge of or information about any fact or facts which have a material bearing upon the liability, or the extent of liability, of the estate for the estate tax, shall, upon request of the district director, make disclosure thereof. Failure on the part of any person to comply with such request will render him liable to penalties (section 7269), and compliance with the request may be enforced in the proper court of the United States (section 7604).