[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 26, 2005
THOMAS  K. KAHN
CLERK

No. 04-10314

D. C. Docket No. 00-00366 CV-2-HL-5

CASSANDRA ORTEGA,
Individually, and as the parent, guardian, and next
friend of Antione Ortega, deceased,

Plaintiff-Appellee,

versus

BIBB COUNTY SCHOOL DISTRICT,

Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of Georgia

**(January 26, 2005)**

Before DUBINA, BLACK and KRAVITCH, Circuit Judges.

DUBINA, Circuit Judge:

This is a tragic case involving the death of a four-year-old boy. The district court entered an order denying defendant/appellant Bibb County School District's ("School District") motion for summary judgment on plaintiff/appellee Cassandra Ortega's ("Ortega") claim brought under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. We granted the School District's petition for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b), and we reverse the district court's order because Ortega has no valid cause of action for tort-like relief under the IDEA.

## I. BACKGROUND

A. *Facts*

Antione Ortega ("Antione") was born prematurely on August 14, 1994. During the first four months of his life, Antione was on a ventilator. After doctors removed Antione from the ventilator, they performed a tracheostomy, which is the placement of a tracheotomy tube in the trachea or windpipe. In 1996, doctors removed the tracheotomy tube. In 1997, School District personnel met with Antione to determine whether he was eligible for special education services. They evaluated Antione and determined that he was eligible for special education services in the area of significant developmental delay. An individualized education program team ("IEP team") met on October 30, 1997, and developed an

2

individualized education program ("IEP") for Antione. In November of that same year, Antione enrolled in the special needs pre-kindergarten program at the Butler Early Childhood Center. At that time, Antione did not have a tracheotomy tube. Antione stopped attending school before the Christmas holidays in 1997 and did not return to school that school year.

A doctor certified that Antione was able to return to school in August 1998. When Antione returned to school, he had a tracheotomy tube. Gloria Johnson ("Ms. Johnson"), Antione's teacher, questioned Ortega about Antione's tracheostomy and received instructions from Ortega about caring for it. Ms. Johnson told Ortega that she would consult with the school nurse about any questions she might have concerning the tracheostomy. Ortega stated in her deposition that she left Antione at school with the assurance that the school had a nurse on staff, and Antione would be cared for.

On his second day at school, Antione was playing on the school's playground equipment as his teacher, Ms. Johnson, watched him. As Antione started to come down the steps of the platform where he was playing, he collapsed. Ms. Johnson and another paraprofessional carried Antione inside, while Ms. Johnson's paraprofessional ran inside the school to get help. When they laid Antione down, Ms. Johnson noticed that Antione's tracheotomy tube was

dislodged. Ms. Johnson took Antione's pulse, and the school's physical therapist began doing mouth-to-mouth resuscitation. School employees called 911, and the operator instructed the employees to change from mouth-to-mouth resuscitation to mouth-to-stoma. School officials claimed that the operator also instructed them not to attempt to reinsert the tracheotomy tube. Paramedics arrived thereafter and attempted emergency efforts before taking Antione to the emergency room. Shortly after he arrived at the emergency room, emergency room personnel pronounced Antione dead. The cause of death was asphyxiation.

B. *Procedural History*

Ortega, individually, and as the parent, guardian, and next friend of Antione, filed a six-count complaint against the School District and other defendants seeking to recover for Antione's alleged wrongful death. Among other claims, Ortega asserted that she was entitled to recover for Antione's death because the School District allegedly violated the IDEA by failing to have a person capable of reinserting Antione's tracheotomy tube at the Butler Early Childhood Center at the time of the incident in question. The School District moved for summary judgment with respect to all claims asserted by Ortega. Concerning Ortega's IDEA claim, the School District argued that any claim Ortega might have under the IDEA was mooted by Antione's death and that the

4

School District did not violate the IDEA. Alternatively, the School District asserted that Ortega did not establish an Article III case or controversy because the only relief Ortega sought on her IDEA claim was costs and attorney's fees.

Subsequently, the district court entered an order denying the School District's motion for summary judgment with respect to Ortega's IDEA claim. The district court determined that Ortega's claim was not moot because, even though monetary damages are not available under the IDEA, a district court has discretionary authority to "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(B)(iii). The district court determined that appropriate relief in this case would be nominal damages for Ortega if she succeeded on her IDEA claim. The district court also determined that a question of fact existed whether the School District violated the IDEA because it did not have a nurse or other qualified person capable of reinserting Antione's tracheotomy tube on the premises of the school at the time of the incident.

The School District filed a Motion for Reconsideration with respect to that part of the district court's order denying its motion for summary judgment. The district court denied the Motion for Reconsideration and granted the School District's request for a permissive interlocutory appeal. The School District then filed a petition for permission to appeal with this court, which we granted.

5

## II.  ISSUE

1.  Whether tort-like money damages are available under the Individuals with Disabilities Education Act.

## III.  STANDARD OF REVIEW

This court reviews *de novo* the district court's order denying summary judgment, applying the same standards that governed the district court's decision. *LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 834-35 (11th Cir. 1998).

## IV.  DISCUSSION

The IDEA[1] was enacted, in part, "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs."  20 U.S.C. § 1400(d)(1)(A).  Consistent with this purpose, the IDEA authorizes federal financial assistance to States that agree to provide disabled children with special education and related services.  *See* 20 U.S.C. § 1411.  The term "related services" includes "transportation, and such developmental, corrective, and other supportive services (including . . . medical services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a child

---

[1]  The IDEA was amended recently by the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, § 302.  The amendment takes effect July 1, 2005, and does not impact this case.

with a disability to benefit from special education." 20 U.S.C. § 1401(22). In other words, related services are those "that enable a disabled child to remain in school during the day [to] provide the student with the meaningful access to education that Congress envisioned." *Cedar Rapids Cmty. Sch. Dist. v. Garret F.*, 526 U.S. 66, 73, 119 S. Ct. 992, 997 (1999) (citation and internal quotation marks omitted).

Under the IDEA, schools evaluate each child with a disability to develop and implement an IEP for each child, specifying educational and developmental goals for the child. *See generally* 20 U.S.C. § 1414. An IEP team consists of several people, including the child's regular education teacher, a special education teacher, a local education agency official, the child's parents, and when appropriate, the child. 20 U.S.C. § 1414(d)(1)(B). The IEP team develops each child's IEP, which must include a statement of the child's present levels of educational performance; a statement of annual goals, including long and short-term objectives; a statement of the specific special education and related services to be provided to the child; a statement of the transition services needed by the child, where applicable; the projected date on which the services will begin and their anticipated duration; and objective criteria and evaluation procedures to be used to determine whether the instructional objectives are being achieved. *See* 20

7

U.S.C. § 1414(d)(1)(A). The local educational agency shall ensure that the IEP team reviews the child's IEP periodically, but not less than annually, to determine whether the child is achieving the annual goals. 20 U.S.C. § 1414(d)(4).

The IDEA also grants parents and students certain procedural rights. *See generally* 20 U.S.C. § 1415. For example, when parents are not satisfied with the IEP, they may file a complaint with the school district. 20 U.S.C. §§ 1415(b)(6), (k)(6). Either the local or state educational agency resolves the complaint by conducting an impartial due process hearing. 20 U.S.C. § 1415(f). A party not satisfied with the decision of the hearing officer may bring a civil suit in federal district court. 20 U.S.C. §§ 1415(i)(2)-(3).

On appeal, the School District contends that the district court erred in denying its motion for summary judgment because Ortega's claim under the IDEA is moot because of Antione's death. The School District also argues that Ortega did not establish an Article III case or controversy because the only relief Ortega sought on her IDEA claim was costs and attorney's fees. We agree with the School District that the district court erred in denying the School District's motion for summary judgment because Ortega cannot establish an Article III case or controversy.

Ortega does not have a cognizable IDEA claim. Although the IDEA is silent about the availability of tort-like damages, "[t]ort-like damages are simply inconsistent with IDEA's statutory scheme." *Sellers v. Sch. Bd. of the City of Manassas*, 141 F.3d 524, 527 (4th Cir. 1998). "The purpose of the IDEA is to provide educational services, not compensation for personal injury, and a damages remedy – as contrasted with reimbursement of expenses – is fundamentally inconsistent with this goal." *Polera v. Bd. of Educ.*, 288 F.3d 478, 486 (2d Cir. 2002). "The IDEA's central mechanism for the remedying of perceived harms is for parents to seek changes to a student's program." *Id.* at 483.

The IDEA mandates that the School District provide a free appropriate public education for a disabled child. The "IDEA provides a panoply of procedural rights to parents to ensure their involvement in decisions about their disabled child's education." *Sellers*, 141 F.3d at 527. As noted earlier, the IDEA specifically sets forth procedures by which school officials are to abide in order to provide a disabled child with a free appropriate public education. *See* 20 U.S.C. §§ 1414, 1415. "The purpose of these procedural mechanisms is to preserve the right to a free appropriate public education." *Sellers*, 141 F.3d at 527. Although the IDEA provides various types of remedies for plaintiffs - including restitution for some parental expenses, compensatory education for students, and procedural

9

remedies – the statute does not provide tort-like relief.  Furthermore, the IDEA highlights other statutes as possible avenues for recovery, stating the IDEA does not "restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities."  20 U.S.C. § 1415(l).

Thus, we agree with our sister circuits that the "IDEA's primary purpose is to ensure [a free appropriate public education], not to serve as a tort-like mechanism for compensating personal injury."  *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 125 (1st Cir. 2003).  *See  Witte v. Clark County Sch. Dist.*, 197 F.3d 1271, 1275 (9th Cir. 1999) (noting that monetary damages are "not 'relief that is available' under the IDEA"); *Charlie F. v. Bd. of Educ. of Skokie Sch. Dist.*, 98 F.3d 989, 991 (7th Cir. 1996) ("[W]e conclude that damages are not 'relief that is available under' the IDEA.  This is the norm for social-welfare programs that specify benefits in kind at public expense, whether medical care or housing or, under the IDEA, education."); *Heidemann v. Rother*, 84 F.3d 1021, 1033 (8th Cir. 1996) (holding that "general and punitive damages for the types of injuries alleged by plaintiffs are not available under the IDEA");  *see also Gean v. Hattaway*, 330

10

F.3d 758, 774 (6th Cir. 2003) ("However, [the district court's] discretion to award monetary damages under this statute extends only to restitution for money that should have been paid by the state for educational services – not to 'general damages.'"); *Babicz v. Sch. Bd. Of Broward County*, 135 F.3d 1420, 1422 n.10 (11th Cir. 1998) (noting in dicta that "[i]mplicit in this legal strategy to avoid IDEA is an apparent desire for compensatory damages not available under IDEA").

Because we hold that the IDEA does not provide a cause of action for tort-like relief, Ortega has no valid cause of action.[2] Hence, she does not present the court with a "case" or "controversy" under Article III, § 2 of the U.S. Constitution. Article III, § 2

> enables the judicial department to receive jurisdiction to the full extent of the constitution, laws, and treaties of the United States, when any question respecting them shall assume such a form that the judicial power is capable of acting on it. That power is capable of acting only when the subject is submitted to it by a party who asserts his rights in the form prescribed by law. It then becomes a case, and the constitution declares, that the judicial power shall extend to all cases arising under the constitution, laws, and treaties of the United States.

---

[2] By deciding that the IDEA provides no valid cause of action for tort-like relief, we are, in other words, determining that there is no implied private right of action in the statute. *See Alexander v. Sandoval*, 532 U.S. 275, 121 S. Ct. 28 (2001) (clarifying the approach courts are obligated to follow in determining whether to imply a private right of action from a statute). However, the parties did not address this issue, and we do not address issues that were not raised and argued on appeal. *O'Neal v. Gonzalez*, 839 F.2d 1437, 1440 (11th Cir. 1988). We do note that had we followed the dictates of *Sandoval* in this case, the result would have been the same.

11

*Osborn v. Bank of U.S.*, 22 U.S. (9 Wheat.) 738, 819 (1824) (Marshall, C.J.).  If a federal law does not provide a cause of action, then a plaintiff cannot validly invoke federal jurisdiction, and thus no "case" or "controversy" arises.  *Jensen v. Mitschele Contracting Co.*, 630 F.2d 209, 211-12 (3d Cir. 1980) ("Federal law gives them no right of action; therefore, they have no right to invoke federal jurisdiction. . . . Perceiving no case or controversy arising under federal law, we leave the appellants to seek redress in [state court].").

Accordingly, we reverse the district court's order and remand the case with instructions that the district court enter summary judgment for the School District on Ortega's IDEA claim because she presents no justiciable claim.

REVERSED and REMANDED.